# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

   v.

KENT H. ROBERTS,

               Defendant.

:
:
:    CASE NUMBER 1:07CV00407 (EGS)
:
:
:
:

## DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a)) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. § 1404(a), defendant Kent H. Roberts will, and hereby does, move this Court for an order transferring venue of this matter to the Honorable Marilyn H. Patel of the United States District Court for the Northern District of California.  Judge Patel is currently presiding over the criminal prosecution of defendant Roberts initiated by the federal government, entitled *U.S.A. v. Roberts*, (Master File No. 07-cr-0100-MHP) and filed on the same date as the complaint in this action, February 27, 2007.

This motion is made on the grounds that this action might have been brought in the Northern District of California, and that transfer of this action is required for the convenience of the parties and witnesses and in the interests of justice.

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ....................................................................................3

II.   NATURE OF PROCEEDINGS AND PARTIES ................................................5

III.  RELEVANT ALLEGATIONS OF THE COMPLAINT ....................................6

    A.   McAfee's Option Grants ..............................................................6

    B.   Roberts' 2000 Stock Option Grant ...............................................6

    C.   CEO George Samenuk's 2002 Option Grant .................................7

    D.   The 2001 Option Grant to a Division President at McAfee ...............7

    E.   Plaintiff SEC's Venue Allegation .................................................7

IV.   ARGUMENT ........................................................................................8

    A.   Standard Governing a Motion to Transfer Venue ..............................8

    B.   This Case "Might Have Been Brought" in the Northern District of
        California ...................................................................................9

    C.   The Private Interest Factors Weigh Heavily in Favor of Transfer to
        California .................................................................................11

        1.   Plaintiff's Choice of Forum Carries Little Weight in this Case ...............11

        2.   The Second and Third "Private Interest" Factors (Defendant's
            Choice of Forum and Where the Claim Arose) Both Suggest
            Strongly that the Northern District Is the More Appropriate Forum ........13

        3.   The Northern District Is the More Convenient Forum for the
            Parties ...................................................................................14

        4.   California Is the More Convenient Forum for Witnesses and Far
            More Witnesses Will Be Subject to the Compulsory Process There .......15

            a.   Witnesses Residing In or Near California ....................................16

            b.   Witnesses Who Are McAfee Board Members and thus
                Regularly Travel to the Northern District of California ..............19

            c.   Witnesses Who Reside on the East Coast, But Are Not
                Subject to Compulsory Process in Washington, D.C ..................20

             d.   Other Potential Witnesses...........................................................22

        5.   Access to Sources of Proof Is Far More Convenient in the
            Northern District ....................................................................23

    D.   The Public Interest Factors Favor Transfer to the Northern District....................23

i.
**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

TABLE OF CONTENTS
(CONTINUED)

PAGE

| | 1. | The Transferee Court Is Equally Familiar with the Governing Law and Will Be More Familiar with the Issues and Facts Related to this Case | 24 |
| | 2. | The Relative Congestion of the Calendars of the Transferee and Transferor Courts | 25 |
| | 3. | The Northern District Has an Interest in Deciding the Controversy at Issue | 26 |
| V. | CONCLUSION | | 28 |

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

**Case No.
1:07CV00407 (EGS)**

## TABLE OF AUTHORITIES

PAGE

### CASES

*Brannen v. Nat'l Railroad Passenger Corp.*
  403 F. Supp. 2d 89 (D.D.C. 2005)..................................................................9, 13, 25

*Chung v. Chrysler Corp.*
  903 F. Supp. 160 (D.D.C. 1995)...........................................................................15

*Claasen v. Brown*
  1996 WL 79490, *6 (D.D.C. 1996)........................................................................15

*Cont'l Grain Co. v. Barge FBL-585*
  364 U.S. 19 (1960) ...............................................................................................25

*Devaughn v. Inphonic, Inc.*
  403 F. Supp. 2d 68 (D.D.C. 2005) .........................................................................9

*First Nat'l Bank v. El Camino Res., Ltd.*
  447 F. Supp. 2d 902 (N.D. Ill. 2006) ...................................................................26

*Kafack v. Primerica Life Ins. Co.*
  934 F. Supp. 3 (D.D.C. 1996).................................................................................26

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*
  2007 WL 420186, *1 (Feb. 5, 2007) ........................................................8, 9, 15, 24

*Poling v. Farrah*
  131 F. Supp. 2d 192 (D.D.C. 2001)........................................................................10

*Pyrocap Int'l Corp. v. Ford Motor Co.*
  259 F. Supp. 2d 92 (D.D.C. 2003) (Sullivan, J.) ..............................................12, 15

*Reiffin v. Microsoft Corp.*
  104 F. Supp. 2d 48 (D.D.C. 2000)...............................................................11, 25, 26

*S.E.C. v. Ernst & Young*
  775 F. Supp. 411 (D.D.C. 1991) ............................................................................12

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*
  24 F.Supp.2d 66 (D.D.C. 1998).............................................................................13

*Smiths Indus. Med. Sys. v. Ballard Med. Prods.*
  728 F. Supp. 6 (D.D.C. 1989).................................................................................26

*Stewart Org., Inc. v. Ricoh Corp.*
  487 U.S. 22 (1988) ..................................................................................................8

*Trout Unlimited v. Dep't of Agric.*
  944 F. Supp. 13 (D.D.C. 1996).................................................................................9

iii.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*U.S. v. Nature's Farm Prods., Inc.*
   2004 WL 1077968, at *6 (S.D.N.Y. 2004) ................................................................11, 12

*U.S.A. v. Roberts,*
   (Master File No. 07-cr-0100-MHP) ............................................................................4

*Valley Comty. Pres. Comm'n v. Mineta*
   231 F. Supp. 2d 23 (D.D.C. 2002).............................................................................24

*Van Dusen v. Barrack*
   376 U.S. 612 (1964) ................................................................................................8, 9

*Vencor Nursing Centers, L.P. v. Shalala*
   63 F. Supp. 2d 1 (D.D.C. 1999)................................................................................25

*Weinberger v. Tucker*
   391 F. Supp. 2d 241 (D.D.C. 2005)..........................................................................25

STATUTES

15 U.S.C.
   § 78aa.......................................................................................................7, 9, 10
   § 78d ..........................................................................................................................5
   § 78u(d)(3)(A) ...........................................................................................................5

28 U.S.C.
   § 1404(a)..................................................................................3, 8, 15, 25
   §1331 .........................................................................................................................9

Fed. R. Civ. P. 45(b)(2) .................................................................................................16

OTHER AUTHORITIES

Section 27 of the Exchange Act ...............................................................................7, 9, 10

Securities and Exchange Act of 1934......................................................................................5

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

This motion is based upon the accompanying Memorandum of Points and Authorities, the accompanying Declaration of William S. Freeman (with all exhibits thereto), the accompanying Request for Judicial Notice (with all exhibits thereto), on all other pleadings and papers on file in this action, and on such oral and documentary evidence as may be presented at the time of any hearing.  A proposed order granting the relief requested is also filed herewith.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

**Case No.**
**1:07CV00407 (EGS)**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.     **INTRODUCTION**

Defendant Kent H. Roberts ("Roberts") respectfully requests that this Court exercise its discretionary power under 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California (the "Northern District"), for the convenience of the parties and witnesses and in the interests of justice.  All of following facts powerfully indicate that this civil enforcement action, brought by the Securities and Exchange Commission ("SEC"), should proceed in the Northern District:

     1.     At all relevant times, Defendant Roberts was employed as an in-house attorney for a public company based in Northern California;

     2.     The underlying circumstances relate virtually exclusively to events occurring in Northern California;

     3.     Nearly all of the key witnesses reside in or near Northern California, and most of them are subject to compulsory process in the Northern District;

     4.     None of the key witnesses reside in this District;

     5.     Nearly all of the relevant documents are maintained in the Northern District;

     6.     Few of the relevant documents are maintained in this District;

     7.     This complaint was filed simultaneously and in obvious coordination with a criminal indictment against Defendant Roberts, arising out of the same alleged circumstances, filed in the Northern District of California by the United States Attorney for that district and currently pending before the Honorable Marilyn Hall Patel.  (*U.S.A. v. Roberts*, Master File No. 07-cr-0100-MHP);

     8.     In addition to the criminal indictment, two other court cases against the Defendant

and arising out of the same alleged occurrences are pending in the Northern District, including a federal shareholder derivative action. Another related state law shareholder derivative action is pending in state court in Northern California;

9.     Published data show that among all U.S. public companies identified as having possible issues relating to options backdating, far more of them are located in the Northern District of California than in any other district, and none of them are located in this District; and

10.    The SEC maintains a Regional Office in Northern California and has filed 12 civil enforcement actions in the Northern District within the past year, including two options backdating cases. Other than this case, it has not filed any options backdating cases in this District.

By contrast, the connections of this District to this case are remarkably meager:

1.     The SEC also maintains offices in this District;

2.     The SEC arguably received three publicly filed documents in this District, all reflecting allegedly improper acts committed in Northern California; and

3.     A handful of potential witness reside in various locations scattered along the Eastern Seaboard, and only one witness is subject to compulsory process in this District.

Litigating this case in this District would result in substantial inconvenience to the Defendant and to a large majority of the witnesses, and will prevent the Defendant from obtaining trial testimony from many witnesses by compulsory process. It would disserve judicial economy in light of the fact that related civil and criminal proceedings are already pending in the Northern District. It would impede the defense of Defendant Roberts by forcing him, as an individual, to defend himself against the United States government in multiple cases simultaneously pending on opposite coasts.

On the other hand, litigating in the Northern District will cause no inconvenience to the SEC, which maintains a Regional Office in the Northern District, is accustomed to litigating around the country, and has substantially greater resources than Mr. Roberts.

Under well-settled law, this Court has the discretion to transfer this case to the Northern District for the convenience of the parties and witnesses and in the interests of justice, and Defendant Roberts respectfully submits that it should do so.

## II.    NATURE OF PROCEEDINGS AND PARTIES[1]

This is a civil enforcement act seeking disgorgement, civil penalties and injunctive relief arising out of alleged violations of various provisions of the Securities and Exchange Act of 1934 ("Exchange Act").  (Complaint, ¶¶ 2-3.)[2]

Plaintiff SEC is a federal government agency charged with enforcement of the federal securities laws.  15 U.S.C. §§ 78d, 78u(d)(3)(A) .  The SEC files civil complaints for securities law violations in judicial districts throughout the country; during the past year, the SEC filed such complaints in at least 35 different judicial districts, including 12 such complaints in the Northern District of California.  (Declaration of William S. in Support of Defendant's Motion to Transfer Venue, submitted herewith ("Freeman Decl."), ¶ 33.)

Defendant Roberts served in various capacities as an in-house attorney at McAfee, Inc. ("McAfee") for a number of years until 2006.  (¶ 7.)  McAfee is a publicly traded company that

---

[1] Throughout this Memorandum, Defendant Roberts will refer to the allegations of the SEC's Complaint.  By doing so, Defendant Roberts does not admit or make any assertion as to the truth of any such allegation; rather, he recites these allegations for the purpose of this Memorandum only, to demonstrate that even under the allegations of the Complaint, this matter should be transferred.  In fact, Defendant Roberts has denied most of the operative allegations of the Complaint in his Answer, filed May 3, 2007.

[2] All subsequent paragraph references are to the Complaint, unless otherwise indicated.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

manufactures computer network security and anti-virus products, and maintains its principal office in Santa Clara, California (¶ 8), within the Northern District. The SEC alleges that Roberts falsified documents relating to stock option grants awarded to himself and other executives at the company, and that he made or assisted others in making false statements in proxy statements and stock ownership reports filed with the SEC. (¶ 1.)

### III.    RELEVANT ALLEGATIONS OF THE COMPLAINT

#### A.    McAfee's Option Grants

McAfee awarded stock options to employees as a way to promote the long-term success of the company and align employees' interests with the interests of the company's shareholders through increased stock ownership. (¶ 9.) McAfee typically awarded stock options to its employees upon the occurrence of three events: upon hire; upon a yearly performance review; or upon promotion. (*Id.*)

#### B.    Roberts' 2000 Stock Option Grant

The SEC alleges that on February 14, 2000, McAfee's Compensation Committee awarded Mr. Roberts an option to purchase 20,000 shares of common stock for $29.63 per share, the closing price on that same date. (¶ 13.) Later in 2000, Mr. Roberts allegedly changed the grant date for his options grant from February 14, 2000 to April 14, 2000, which lowered the exercise price to $19.75 per share. (¶ 14.) The SEC alleges that Mr. Roberts was not authorized to change the grant date and that he hid the change from McAfee until May 2006. (¶ 15.)

The SEC alleges that on or about January 10, 2002, Roberts filed a Form 3 (an Initial Statement of Beneficial Ownership) with the SEC, falsely reporting the exercise price of $19.75 per share. (¶ 16.)

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

**C.    CEO George Samenuk's 2002 Option Grant**

The SEC also alleges that in January 2002, Mr. Roberts wrongly changed the date of an option grant to McAfee's then-CEO, George Samenuk by altering the minutes of a Compensation Committee meeting, thereby conferring a benefit on Mr. Samenuk.  (¶¶ 19-23.)

The SEC alleges that Roberts participated in the preparation of McAfee proxy statements that contained materially false and misleading information and omitted material facts regarding Mr. Samenuk's 2002 grant and Roberts' 2000 grant.  (¶¶ 25-27.)

**D.    The 2001 Option Grant to a Division President at McAfee**

The SEC also alleges that Mr. Roberts knew, or was reckless in not knowing, that both McAfee's 2002 and 2003 Proxies contained materially false information and omitted material facts about an option grant for 500,000 shares to a McAfee division president.  (¶¶ 28-29.) McAfee's policy allegedly prohibits granting an option to an employee prior to the employee's start date.  (¶ 31.)  The grant in question was dated October 31, 2001, but the Division President allegedly was not hired by McAfee until early December 2001.  (¶¶ 29-30.)

**E.    Plaintiff SEC's Venue Allegation**

The SEC asserts venue in this District on two bases, one of which is patently incorrect and the second of which is unsupported by specific allegations.  The SEC claims venue is proper here pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, "[1] because Roberts *transacted* business in this judicial district and [2] because certain of the acts and transactions constituting the violations in this case occurred within this judicial district." (¶ 5; emphasis added.)

The first asserted basis is improper because Section 27 provides that venue is proper "in the district where the defendant *is* found or *is* an inhabitant or *transacts* business," (emphasis

added) using the present tense to emphasize that where venue is based upon the location of the defendant (as opposed to his or her alleged acts), it must be based on the defendant's *present* circumstances. The SEC alleges that Roberts was terminated from his employment at McAfee in May 2006 (¶ 7), and nowhere alleges that Roberts presently "transacts business" in this District.

Thus the only basis for the SEC's assertion that venue is proper here is the allegation that "acts and practices constituting the violations . . . occurred within this District." (¶ 5.) Since none of the allegedly improper underlying acts is alleged to have occurred anywhere near Washington, D.C., it appears that the SEC is relying on allegations that the Defendant bears some responsibility for certain SEC filings. (¶¶ 16, 25-27.) The SEC does not allege, however, how these forms were filed (whether by mail or electronically), by whom, or where or how they were received by the SEC. At best, it is unclear whether any act was committed in this District.

## IV.   ARGUMENT

### A.   Standard Governing a Motion to Transfer Venue

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court has discretion to adjudicate motions to transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

A motion under Section 1404(a) must make two showings to justify a transfer. First, defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district. *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332-EGS, 2007 WL 420186, at *1 (Feb. 5, 2007) (Sullivan, J.) (slip op.) (citing *Devaughn v. Inphonic, Inc.*,

403 F. Supp. 2d 68, 71-72 (D.D.C. 2005)); *see also Brannen v. Nat'l Railroad Passenger Corp.*, 403 F. Supp. 2d 89, 91 (D.D.C. 2005) (citing *Van Dusen*, 376 U.S. at 622). Second, defendant must demonstrate that the considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Oceanic Exploration*, 2007 WL 420186, at *1 (citing *Devaughn*, 403 F. Supp. 2d at 72; *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

This Court has stated that "in determining whether considerations of convenience and the interests of justice support transfer, the Court weighs a number of private-interest and public-interest factors." *Oceanic Exploration*, 2007 WL 420186, at *2. The private-interest factors include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent witnesses may be unavailable for trial in the original forum; and (6) the ease of access to proof.

*Id.* (citing *Devaughn*, 403 F. Supp. 2d at 72). The public interest considerations include: (1) the transferee court's familiarity with the governing law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies. *Oceanic Exploration*, 2007 WL 420186, at *5.

**B.    This Case "Might Have Been Brought" in the Northern District of California**

This case is one that "might have been brought" – and indeed should have been brought – in the Northern District. Given that this case is based on a federal question, district courts have subject matter jurisdiction under the general federal question jurisdiction statute, 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Under a separate clause in Section 27, venue is proper in the Northern District of California because both criminal proceedings and civil enforcement or injunctive actions "may be brought in the district wherein

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

any act or transaction constituting a violation occurred." This provision, in combination with Section 27's nationwide service of process provision,[3] establish both venue and personal jurisdiction in the Northern District. *See Poling v. Farrah*, 131 F. Supp. 2d 192, 193 (D.D.C. 2001) (venue under Section 27 is proper where alleged acts or transactions constituting the violation occurred).

Here, it is unquestioned that "acts or transactions" that allegedly "constitute the violation" occurred in the Northern District of California. Indeed, although the Complaint does not allege the location of each act, it appears that all of the alleged improper acts occurred at Company headquarters in the Northern District. Even the acts of transmitting allegedly misleading filings to the SEC appear to have been initiated in Northern California. Moreover, on the same day the SEC created and signed the Complaint in this action – February 27, 2007 – the Government also filed a criminal indictment based on the same allegations against Defendant Roberts in the Northern District. (Request for Judicial Notice ("RJN"), Exh. A.)[4] Thus, not only is there no dispute that this case "might have been brought" in the Northern District of California, there is no logical reason why it was commenced here.

---

[3] Service of process is not contested here; Defendant Roberts has already filed an answer. It is worth noting, however, that the Exchange Act provides for nationwide service of process wherever "the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.

[4] The Complaint in this matter was signed by the SEC on February 27, 2007. The date stamp on the Complaint is the next day, February 28, 2007.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

**C.    The Private Interest Factors Weigh Heavily in Favor of Transfer to California**

**1.    Plaintiff's Choice of Forum Carries Little Weight in this Case**

Courts typically accord "substantial deference" to a plaintiff's choice of forum. *See Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000). Such deference is not warranted here, however, for two reasons.

First, unlike an individual, the federal government is not a resident of a single judicial district. Rather, it is equally present in all districts, and as a result, its choice of forum does not receive the deference accorded an individual plaintiff's choice:

> [T]he plaintiff is the federal government, which is no more a resident of the Southern District of New York than it is of the Northern District of California. Because the United States government can adequately litigate in multiple fora, "while its choice [of forum] is properly granted significant weight, it is not a choice that deserves the same level of deference as does a choice by a plaintiff to bring an action in her home district." [Citations omitted.] Thus, this factor would weigh only slightly against transfer.

*U.S. v. Nature's Farm Prods., Inc.*, No. 00-Civ.-6593-SHS, 2004 WL 1077968, at *6 (S.D.N.Y. 2004) (granting motion to transfer venue). Not only *can* the SEC "litigate in multiple fora" it does so in practice, having filed enforcement actions in at least 35 separate judicial districts across the country in the past year alone, including 12 complaints filed in the Northern District. (Freeman Decl. ¶ 33.) In fact, the only two other backdating-related cases filed to date by the SEC involved two companies located in the Northern District (Apple Computer, Inc. and Brocade Communications Systems, Inc.) and were filed in the Northern District. (*Id.* ¶ 33, Exhs. F and G.) Given these facts, and the coordinated filing of the indictment in the Northern District, there can be no credible argument that the SEC's decision to file *this* case in this District is anything other than arbitrary, and it deserves little if any deference.

11.
DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))
Case No.
1:07CV00407 (EGS)

Second, a plaintiff's choice of forum is given little deference when the chosen forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Id.* at *2; *see also Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 95-97 (D.D.C. 2003) (Sullivan, J.) (finding that the majority of the allegations in the complaint refer to events that allegedly took place outside of the District of Columbia and granting the motion to transfer). As set forth more fully below, all of the events alleged in the Complaint occurred in the Northern District of California. All of the relevant documents can be found in the Northern District, with the sole exception of the SEC filings, which can be retrieved from the internet. Not a single witness resides within the District of Columbia, and the vast majority of the witnesses reside either in California or on the West Coast. Nationwide, in 2005 and 2006, 13 civil options backdating-related cases were filed within the districts comprising the Ninth Circuit, including eight within the Northern District, and none were filed in this District. (Freeman Decl. ¶ 31; RJN, Exh. F at p. 15.)

The only apparent connection of this case to the District of Columbia alleged here is that Mr. Roberts allegedly assisted in the preparation of documents that were subsequently transmitted for filing with the SEC. (*See* ¶¶ 24, 25, 28, 47, 51.)[5] This Court has previously granted a motion to transfer under just such circumstances – where the underlying facts occurred in the proposed transferee forum and the only connection to the District of Columbia was the filing of allegedly false and misleading reports with the SEC. *S.E.C. v. Ernst & Young*, 775 F. Supp. 411, 416-17 (D.D.C. 1991).

---

[5] Another possible connection, and perhaps the real reason for filing in this District, is that the particular SEC staff attorneys assigned to handle the case are housed in its Washington, D.C. office. In light of the other factors set forth by Defendant Roberts, this is hardly a compelling reason to prevent transfer.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

2.    **The Second and Third "Private Interest" Factors (Defendant's Choice of Forum and Where the Claim Arose) Both Suggest Strongly that the Northern District Is the More Appropriate Forum**

Courts analyze a defendant's choice of forum in light of the connections between the events underlying the plaintiff's action and the proposed forum. *See Brannen*, 403 F. Supp. 2d at 93; *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 72 (D.D.C. 1998). Thus the second private interest factor (defendant's choice of forum) and the third private interest factor (where the claims arose) can be considered together, and both strongly support transfer to the Northern District – which is both the district of Defendant's choice and the district with by far the strongest connection of any district in the country to the facts related to this lawsuit.

McAfee, Defendant's former employer and the source of the option grants in question, has its principal office in Santa Clara, California, within the Northern District of California. (*See* ¶ 8.) Thus, Northern District of California is presumably where Defendant allegedly accessed McAfee's computerized internal system and changed the option date of his grant. (*See* ¶ 14.) McAfee conducted an internal investigation into its stock option practices within and from the Northern District of California. (Freeman Decl. ¶ 3.) Several key Board of Directors and Compensation Committee meetings occurred at McAfee's company headquarters in Santa Clara (*Id.* ¶ 2), and presumably minutes and records of such meetings can be found there. Specifically, the January 15, 2002 Compensation Committee meeting at which the Compensation Committee approved the grant of 420,000 option shares to McAfee's then-CEO George Samenuk and the subsequent events that allegedly culminated in the change of the date of that grant occurred in the Northern District of California. (*See* ¶ 19; Freeman Decl. ¶ 5, Exh. A.) Not a single one of the alleged wrongful acts underlying the supposedly misleading filings occurred in this District.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

Also reflecting the Northern District's close connection to this litigation is the fact that both the related criminal indictment and two consolidated shareholder derivative complaints arising out of the same alleged circumstances are already pending in the Northern District. (RJN, Exhs. A, B and C.)  Moreover, a third proceeding – a state court derivative complaint based on three consolidated complaints – is currently pending in California Superior Court for Santa Clara County, which is within the Northern District.  (*Id.,* Exh. D.)  The fact that all these proceedings involving Defendant Roberts have already been filed in Northern California, and none other than the present case have been filed in or near this District, clearly demonstrates the Northern District's substantial connection to the operative facts.

### 3.    The Northern District Is the More Convenient Forum for the Parties

The Northern District is more convenient to the parties because a vast majority of the relevant documents and key witnesses are located in or near the Northern District.  (Freeman Decl. ¶¶ 6-27.)  This is understandable in light of the fact that McAfee's principal place of business is within the Northern District and its internal investigation, its key Compensation Committee and Board meetings and any allegedly improper activity occurred within, or originated from, the Northern District.

An additional, and critical, convenience factor is the fact that Mr. Roberts is already defending himself in three cases involving the same or similar operative facts within the Northern District, including his criminal defense.  Forcing Mr. Roberts to defend himself in multiple actions on both coasts is more than inconvenient; it is fundamentally unfair.

There is no inconvenience to the SEC to litigate in the Northern District.  The SEC's San Francisco Regional Office is located at 44 Montgomery Street in San Francisco, California, within the Northern District, and the SEC frequently litigates in the Northern District, including

14.
**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

having filed the only other options backdating enforcement actions in that district. (*Id.* ¶ 33.)

Thus, the convenience of the parties strongly supports transfer.

4. **California Is the More Convenient Forum for Witnesses and Far More Witnesses Will Be Subject to the Compulsory Process There**

This Court has explained that the most critical factor to examine under Section 1404(a) is the convenience of the witnesses. *See Pyrocap*, 259 F. Supp. 2d at 97 (considering that key witnesses are employed in and reside in the proposed forum in finding that the balance of interests favors a transfer) (citing *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995)). This case will undoubtedly require the resolution of critical factual issues that depend upon the credibility of witnesses; therefore, live testimony should be preferred to written or videotaped depositions. *See Pyrocap*, 259 F. Supp. 2d at 98 (citing *Claasen v. Brown*, No. Civ. A 94-1018-GK, 1996 WL 79490, at *6 (D.D.C. 1996) ("Live testimony is always preferable to written deposition, particularly where the resolution of critical factual issues will likely turn on the credibility of witnesses.")). Further, "[c]ourts have consistently transferred actions when the majority of the witnesses live near the transferee forum, or where the witnesses may not be subject to the subpoena power of the trial court." *Pyrocap*, 259 F. Supp. 2d at 98 (quoting *Claasen*, 1996 WL 79490, at *6). This Court considers the "availability of the compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *See Oceanic Exploration*, 2007 WL 420186, at *4 (citing *Reiffen*, 104 F. Supp. 2d at 53).

Among the 21 witnesses currently believed to be critical to the resolution of this action, 14 reside in California or nearby states; none resides in the District of Columbia, and only six

DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))
Case No.
1:07CV00407 (EGS)

reside anywhere on the East Coast.  (Freeman Decl. ¶¶ 6-27.)[6]  Of those seven who do not reside

in or near California, four are current board members of McAfee who regularly travel to

California on company business.  (*Id.* ¶¶ 19-22.)  Thus, 16 of the 21 witnesses expected to testify

currently reside in or transact business in the Northern District of California or on the West

Coast.  Based on residence or the regular conduct of business within 100 miles of the place of

trial (Fed. R. Civ. P. 45(b)(2)), it appears that 13 of the 21 witnesses would be subject to a trial

subpoena in the Northern District; only one would be subject to such a subpoena in this District.

**a.  Witnesses Residing In or Near California**

Leslie Denend:  Mr. Denend served as president of McAfee from December of 1997 to

May of 1998 and as a member of its Board of Directors from 1995 to 2005.  (Freeman Decl. ¶ 6.)

He was a member of the Compensation Committee from 1995 through 1998.  He was a member

of the Audit Committee from 1998 through 1999.  He is expected to be a witness with respect to

the January 15, 2002 Board meeting and the ratification of the minutes for that meeting, as well

as McAfee's stock option practices during the relevant time period.  He currently resides in St.

Helena, California, which is located within the Northern District of California.  (*Id.*)

Sylvia Garcia-Lechelt:  Ms. Garcia-Lechelt was McAfee's Senior Vice President of

Human Resources and the administrator of its stock options program during the time period

referred to in the Complaint.  (*Id.* ¶ 7.)  She is expected to be a witness with respect to all grants

at issue.  Ms. Garcia-Lechelt currently resides in Pacifica, California, which is located within the

Northern District of California.  (*Id.*)

---

[6]  One witness currently resides in Texas, roughly equidistant from this District and Northern
California.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

Richard Hornstein:  Mr. Hornstein was the General Counsel of McAfee, the person who hired Mr. Roberts and was Mr. Roberts' immediate supervisor during certain times.  (*Id.* ¶ 8.) He is expected to be a witness with respect to stock option practices at McAfee and with respect to the responsibilities of his position – later held by Mr. Roberts – and other positions in the legal department.  He currently resides in Redwood City, California and is employed by Elemental Security, Inc. in San Mateo, California.  Both cities are located within the Northern District of California.  (*Id.*)

Enzo Torresi:  Mr. Torresi was a member of the Board of Directors in 2000 and 2001. He was a member of the Audit Committee in 2000.  (*Id.* ¶ 9.)  He is expected to be a witness to the practices of McAfee's Board and its delegation of responsibility to management.  He currently resides in Los Gatos, California and is the managing partner at myQube, based in Cupertino, California, both of which are located within the Northern District of California.  (*Id.* )

Peter Watkins:  Mr. Watkins was the President and Chief Operations Officer of McAfee in 2000.  (*Id.* ¶10.)  He is expected to be a witness to the practices of the Board and its delegation of responsibility to management.  Mr. Watkins currently serves as the Chief Executive Officer of WebRoot Software, which has an office in Mountain View, California and he currently resides in Atherton, California, both of which are located within the Northern District of California.  (*Id.*)

Jennefer Koopman:  Ms. Koopman was an administrator in Human Resources at McAfee and is expected to be a witness to McAfee's stock option practices.  (*Id.* ¶ 11.)  She currently resides in San Jose, California, which is located in the Northern District of California.  (*Id.*)

Sharon Miwa:  Ms. Miwa worked with Ms. Koopman in the Human Resources department at McAfee and is expected to be a witness to McAfee's stock option practices and to the circumstances surrounding Mr. Samenuk's 2002 option grant.  (*Id.* ¶ 12.)  She currently

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

works at McAfee in Sunnyvale, California, which is located in the Northern District of
California. (*Id.*)

Terry Davis: Mr. Davis was the Controller of McAfee from 2000 through 2002. (*Id.* ¶
13.) He is expected to be a witness to the events surrounding the alleged changing of the date of
Mr. Roberts' 2000 promotion grant (¶¶ 14-15), as well as McAfee's stock option practices in
general. Mr. Davis currently resides in Portland, Oregon, which is far closer in proximity to the
Northern District of California than to the District of Columbia. (Freeman Decl. ¶ 13.)

Vernon Eugene ("Gene") Hodges: Mr. Hodges served as the President of McAfee from
2001 to 2006. (*Id.* ¶ 14.) He is expected to be a witness with respect to stock option practices at
McAfee and to management's interaction with the McAfee Board. He currently resides in La
Jolla, California and is currently the Chief Executive Officer of Websence, located in San Diego,
California, which are far closer in proximity to the Northern District of California than to the
District of Columbia. (*Id.*)

Edwin Harper: Mr. Harper was a member of McAfee's Board of Directors from 1996
through 2001. (*Id.* ¶ 15.) He was a member of the Audit Committee from 1997 through 2002.
He was also a member of the Compensation Committee from 1998 through 2000. He is
expected to be a witness to the practices of the Board and its delegation of responsibility to
management. His last known residence address is in Fort Collins, Colorado, which is closer in
proximity to the Northern District of California than to the District of Columbia. (*Id.*)

William ("Bill") Larson: Mr. Larson was the Chief Executive Officer of McAfee from
1993 to 2000. (*Id.* ¶ 16.) He is expected to be a witness with respect to stock option practices at
McAfee and to management's interaction with the Board. His last known residence address is in
Saratoga, California, which is within the Northern District of California. (*Id.*)

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

Stephen Richards:  Mr. Richards was McAfee's Chief Financial Officer from 2001 through 2004.  (*Id.* ¶ 17.)  He is expected to be a witness with respect to stock option practices at McAfee and to management's interaction with the Board.  He is also expected to be a key witness with respect to Mr. Samenuk's 2002 option grant.  His last known residence address is in Cupertino, California, which is within the Northern District of California.  (*Id.*)

> **b.    Witnesses Who Are McAfee Board Members and thus Regularly Travel to the Northern District of California**

McAfee's Corporate Governance Guidelines require that the Board meet at least four times annually.  (*Id.* ¶ 18, Exh. B.)  The following witnesses are members of McAfee's Board of Directors and it is likely that they travel to the Northern District in that capacity regularly.

Denis O'Leary:  Mr. O'Leary has been a member of the Board of Directors and a member of the Compensation Committee since 2003.  (*Id.* ¶ 19.)  He is expected to be a witness to the practices of the Board and its delegation of responsibility to management.  His last known residence address is in New York, New York (*Id.*); however, as a member of McAfee's board, it is highly likely that his director responsibilities include regular travel to the Northern District.  Therefore, travel to the Northern District would not be inconvenient for Mr. O'Leary.

Robert Pangia:  Mr. Pangia has been a member of the Board of Directors since 2001 and has been a member of the Audit Committee since 2001 and the Compensation Committee since 2002.  (*Id.* ¶ 20.)  He is expected to be a witness to the practices of the Board and its delegation of responsibility to management.  His last known residence address is in Watchung, New Jersey (*Id.*); however, as a member of McAfee's board, it is highly likely that his director responsibilities include regular travel to the Northern District.  Therefore, travel to the Northern District would not be inconvenient for Mr. Pangia.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
                                                                    **Case No.
                                                                    1:07CV00407 (EGS)**

Liane Wilson:  Ms. Wilson has been a member of the Board of Directors since 2002, is a member of the Audit Committee and was a member of the Compensation Committee through 2005.  (*Id.* ¶ 21.)  She is expected to be a witness to the practices of the Board and its delegation of responsibility to management.  Her last known residence address is in Seattle, Washington, which is far closer in proximity to the Northern District of California than to the District of Columbia.  (*Id.*)  In addition, as a member of McAfee's board, it is highly likely that her director responsibilities include regular travel to the Northern District.  Therefore, travel to the Northern District would not be inconvenient for Ms. Wilson.

Dale Fuller:  Mr. Fuller was the interim Chief Executive Officer at McAfee in 2006.  (*Id.* ¶ 22.)  He has also been a member of the Board of Directors since January 2006.  He is expected to be a witness to the Board's actions relevant to the internal investigation of stock options and the termination of Mr. Roberts.  His last known residence address is in Dulzura, California, which is far closer in proximity to the Northern District of California than to the District of Columbia.  (*Id.*)  In addition, as a member of McAfee's board, it is highly likely that his director responsibilities include regular travel to the Northern District.  Therefore, travel to the Northern District would not be inconvenient for Mr. Fuller.

         **c.**        **Witnesses Who Reside on the East Coast, But Are Not Subject to Compulsory Process in Washington, D.C.**

The following witnesses were members of McAfee's Board of Directors or Executive Team and reside on the East Coast or Texas.  None of these individuals are subject to compulsory process in this District.[7]

---

[7]  Only one witness, Virginia ("Ginna") Gemmell, appears to be subject to compulsory process in this District.  Ms. Gemmell was a member of McAfee's of Directors from 1996 to 2001.  (*Id.* ¶ 25.)  She was also a member of the Compensation Committee from 1997 to 2000 and a member of the Audit Committee from 1999 to 2002.  She is expected to be a witness with respect to the

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

                                       **Case No.**
                                     **1:07CV00407 (EGS)**

Robert Dutkowsky:  Mr. Dutkowsky was a member of the Board of Directors from 2001 until January of 2007.  He was a member of the Audit Committee from 2002 to 2007 and was a member of the Compensation Committee from 2001 to 2007.  (*Id.* ¶ 23.)  He is expected to be a witness to the practices of the Board and its delegation of responsibility to management.  His last known residence address is in Westborough, Massachusetts, Bluffton, South Carolina and/or Tampa, Florida.

George Samenuk:  Mr. Samenuk was the Chief Executive Office and Chairman of the Board of McAfee from 2001 to 2006.  (*Id.* ¶ 24.)  He is expected to be a witness regarding the January 15, 2002 Board meeting and events subsequent to that meeting regarding his own option grants, as well as McAfee's stock option practices during the time period referred to in the Complaint and the circumstances surrounding the 2001 grant to a McAfee division president. (¶¶ 28-37.)  His last known residence address is in Ridgefield, Connecticut.  (Freeman Decl. ¶ 24.)

Art Matin:  Mr. Matin, who appears to be the person referred to in the Complaint as "a McAfee Division President" (*e.g.*, ¶ 29), was the President of the McAfee Division of Network Associates, Inc. (McAfee's predecessor) from 1999 to at least 2002.  (Freeman Decl. ¶ 26.)  Mr. Matin was the recipient of an option grant as to which it is alleged that Defendant made false statements (¶¶ 28-37.)  He is expected to be a witness to the facts surrounding the commencement of his employment and the granting of the option in question.  Mr. Matin is the President and Chief Executive Officer of TouchTunes Music Corporation in Lake Zurich, Illinois and his last known residence address is in Westport, Connecticut.  (Freeman Decl. ¶ 26.)

January 15, 2002 Board meeting and the ratification of the minutes for that meeting, as well as McAfee's stock option practices during the time period referred to in the Complaint.  Ms. Gemmell currently resides in Alexandria, Virginia.  (*Id.*)

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Case No.
1:07CV00407 (EGS)

<u>Kevin Weiss</u>:  Mr. Weiss was the President of McAfee in 2006.  (*Id.* ¶ 27.)  Mr. Weiss is expected to be a witness regarding the stock option practices at McAfee, the events leading to the announcement of an investigation into McAfee's stock option practices and the termination of Mr. Samenuk.  Mr. Weiss' last known residence address is in Houston, Texas.  (*Id.*)

### d.      Other Potential Witnesses

Finally, additional witnesses involved in the stock options process and internal investigation of McAfee have yet to be identified.  In light of the fact that McAfee has always been headquartered in the Northern District, it is likely that the vast majority of such witnesses will reside or work in the Northern District and that none of them reside in the District of Columbia.  Unless this case is transferred to the Northern District, these third-party witnesses (to the extent that they voluntarily agree to do so) will be forced to travel all the way across the country to testify in this action.  This will cause significantly more disruption to their work and lives than would occur if trial took place in the Northern District.

Even more significantly, certain of these witnesses are unlikely to appear to testify at trial in the absence of compulsory process.  It must be noted that McAfee has a history of enforcement problems with the SEC, including a consent decree entered in a SEC enforcement proceeding in 2006 requiring that McAfee pay a $50 million civil penalty to the SEC arising out of allegations that McAfee fraudulently misstated revenues and earnings by hundreds of millions of dollars between 1998 and 2000.  (Freeman Decl. ¶ 28, Exh. C.)  In addition, as McAfee announced on April 26, 2007, the Company anticipates that it will restate its past financial statements to record between $100 million and $150 million in charges to earnings arising out of irregularities in past stock option grants.  (*Id.* ¶ 29,  Exh. D.)  In light of McAfee's past and ongoing enforcement problems, it seems likely that numerous witnesses associated with McAfee

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

**Case No.**
**1:07CV00407 (EGS)**

will be reluctant to testify voluntarily at trial. It is therefore unlikely that Defendant will be able to obtain the live testimony of these witnesses in the absence of the ability to subpoena them to appear.

Accordingly, the convenience of the witnesses and the availability of the compulsory process, the most significant factor in the Court's considerations of transfer, strongly favor transferring this case to the Northern District of California.

**5.    Access to Sources of Proof Is Far More Convenient in the Northern District**

The vast majority of relevant documents and key witnesses are located within the Northern District. A majority of the documents will likely be produced from McAfee's headquarters, which is located within the Northern District. Such documents will include, but are not limited to, relevant portions of certain employees' option files, records of their option awards and trading activity, meeting minutes of McAfee's Compensation Committee, McAfee's option plans and policies, the computers on which Mr. Roberts allegedly changed his option grant, auditors' work papers, documents collected in the course of the internal investigation and restatement process, and emails and communications among Mr. Roberts and other witnesses. By contrast, there are no documents that are uniquely available in this District. Any documents that were filed with the SEC in the District of Columbia, such as proxies or stock ownership reports, are readily available on the internet and can be accessed from anywhere in the world. Therefore, the location of and access to evidence favors transfer as well.

**D.    The Public Interest Factors Favor Transfer to the Northern District**

In addition to the above private interest factors, courts also consider public interest factors, including: (1) the transferee court's familiarity with the governing law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in

DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

Case No.
1:07CV00407 (EGS)

deciding local controversies. *Oceanic Exploration*, 2007 WL 420186, at *4. On balance, these factors favor transfer as well.

     1.    **The Transferee Court Is Equally Familiar with the Governing Law and Will Be More Familiar with the Issues and Facts Related to this Case**

This first public interest factor – the forum's familiarity with the governing law, issues and facts – weighs in favor of transfer.

The familiarity of the two districts with governing law appears to be neutral because this case involves federal securities law and one federal district is not presumed to be more familiar with federal law than another. *See Valley Comty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 45 (D.D.C. 2002) (with respect to transfer of venue "[a]s the action concerns federal law, neither court is better suited to resolve these issues").

At the same time, transfer is in the public interest because the courts in the Northern District will be more familiar with the factual issues related to this case. The most obvious reason for this is that there are three related actions pending within the Northern District based on the same transactions and occurrences. In addition, at a more general level, the center of gravity of the option backdating issue nationally is in the Northern District; of a total of 136 U.S. public companies identified by the *Wall Street Journal* as having possible options backdating issues, 66 (or 48.5%) are located in California and 50 (or 36.8%) are located within the Northern District; none are located in this District (RJN, Exh. E; Freeman Decl. ¶ 30.) Press coverage of the issue is five times as common in the Northern District as in this District. (Freeman Decl. ¶ 32, Exh. E.)

When deciding whether to transfer cases courts consider "whether one circuit is more familiar with the same parties and issues or related issues than other courts." *Weinberger v.*

*Tucker,* 391 F. Supp. 2d 241, 245 (D.D.C. 2005) (Sullivan, J.) (quoting *Reiffin,* 104 F. Supp. 2d

at 55); *see also Brannen,* 403 F. Supp. 2d at 95 (quoting *Cont'l Grain Co. v. Barge FBL-585,*

364 U.S. 19, 26 (1960) ("[T]o permit a situation in which two cases involving precisely the same

issues are simultaneously pending in different District Courts leads to wastefulness of time,

energy and money that § 1404(a) was designed to prevent.")). It is clear that the interests of

justice include a desire to avoid multiple litigation from a single transaction. *See Weinberger,*

391 F. Supp. 2d at 245 (citing *Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 6

(D.D.C. 1999)). "Indeed, this court has transferred an action to a district court which had cases

sharing only 'the same factual underpinning,' even though the actions in the transferee court

concerned different legal issues." *Reiffin,* 104 F. Supp. 2d at 56. Because three other

proceedings related to the same or similar operative facts are pending within the Northern

District, the Northern District will be familiar with Mr. Roberts, the evidence and the issues

related to this case. Litigation of this matter in the District of Columbia would squander judicial

resources and run the risk of inconsistent rulings. Thus, the transferee court's familiarity with

the action favors transfer.

  **2.  The Relative Congestion of the Calendars of the Transferee and Transferor Courts**

  Docket congestion is also a consideration in deciding whether to transfer a case. *See*

*Brannen,* 403 F. Supp. 2d at 95-96. Here, a transfer to the Northern District would not delay

resolution of this case because the case is in its early stages and the Court has not yet

familiarized itself with the underlying issues and merits. *Id.* at 96 (finding that a transfer of

venue under Section 1404(a) would not delay resolution of the case because the case was still in

its infancy).

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

Moreover, transfer would most likely speed up the resolution of the case. When evaluating speed to trial as factor in transfer analysis, court looks to Federal Court Management Statistics to determine: (1) median months from filing to disposition; and (2) median months from filing to trial. *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913-14 (N.D. Ill. 2006). For the twelve-month period ending September 30, 2006, the median time from filing to disposition in civil cases was 10.2 months in the District of Columbia and 7.4 months in the Northern District of California. (RJN, Exh. G.) The median time from filing to trial was 37 months in the District of Columbia, but only 25 months in the Northern District. (*Id.*) Further, the Northern District is already acquainted with the facts and legal issues implicated here. In fact, this Court has noted that the presence of a related action in another court is so strong a public-interest factor that this Court has transferred venue *sua sponte*. *See Reiffin*, 104 F. Supp. 2d at 58 n.19 (citing *Smiths Indus. Med. Sys. v. Ballard Med. Prods.*, 728 F. Supp. 6 (D.D.C. 1989)). Accordingly, this factor favors transfer.

### 3. The Northern District Has an Interest in Deciding the Controversy at Issue

The Northern District has a more compelling interest in having this localized controversy decided at home. The vast majority of operative facts, including the prosecution of Mr. Roberts and the investigation of McAfee's options practices, are located in the Northern District. *See Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3 (D.D.C. 1996) (finding the fact that the majority of the operative events, including the prosecution of the plaintiff and the related investigation, occurred in transferee's jurisdiction favored transfer). Further, the majority of witnesses and three related lawsuits reside within the Northern District and the facts have very few, if any, meaningful connections to the District of Columbia.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

Even the SEC recognized the importance of local interest in connection with a proceeding against McAfee just last year, when it filed and settled a civil action against the Company alleging accounting fraud. The SEC filed that action in the Northern District. (Freeman Decl. ¶ 28, Exh. C.)

In addition, it is no secret that the alleged backdating of stock options is a local concern within the Northern District. According to the *Wall Street Journal*, nearly one-half of the public companies identified with possible options backdating issues are located within California, and more than one-third are within the Northern District; these number dwarf those of any other state or district. (Freeman Decl. ¶ 30; RJN, Exh. E.) Of the 90 public companies that have disclosed SEC probes into their options practices, the same ratios are present: half are located in California and one-third in the Northern District. (*Id.*) Of the 20 options-related civil cases filed in federal courts in 2006, 11 were filed within the districts comprising the Ninth Circuit; none were filed in this District. (Freeman Decl. ¶ 31; RJN, Exh. F at p. 15.) In 2005, only two options backdating cases were filed in federal courts and both were within the Ninth Circuit as well. (*Id.*) Of these 13 cases filed in the Ninth Circuit, all but one were filed in California and eight were filed in the Northern District. (*Id.*)

In fact, a Lexis-Nexis search of two major general circulation newspapers in each jurisdiction reveals that newspaper coverage of the stock option issue over the last 16 months within the Northern District outnumbers newspaper coverage within the District of Columbia by nearly a 5 to 1 ratio. (*See* Freeman Decl. ¶ 32, Exh. E.) Given the local impact, the Northern District has a far greater interest in seeing this matter adjudicated locally and therefore transfer is proper.

27.
**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

## V.     CONCLUSION

All of the foregoing factors, including the convenience of third party witnesses, the availability of the compulsory process, the ease of access to sources of proof, the presence of related lawsuits in the Northern District and the interests of justice, weigh heavily in favor of transferring this action to the Northern District of California.  The only apparent reason for this action to have been filed in this District is that the plaintiff, a federal agency with offices in both districts, chose to file here, even as another federal agency simultaneously indicted Defendant Roberts in the Northern District for the same alleged acts.  Under the circumstances of this case, the law is settled that the SEC's choice is entitled to little or no deference.  Accordingly, the Defendant respectfully requests that this action be transferred to the United States District Court for the Northern District of California.

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**
Case No.
1:07CV00407 (EGS)

Dated: May 21, 2007                    Respectfully submitted,

                                       COOLEY GODWARD KRONISH LLP
                                       Michael J. Klisch (DC Bar No. 429711)
                                       1200 19th Street, NW
                                       5th Floor
                                       Washington, DC 20036
                                       (202) 842-7800

                                       COOLEY GODWARD KRONISH LLP
                                       Stephen C. Neal (CA Bar No. 170083)
                                       William S. Freeman (CA Bar No. 82002)
                                       Neal J. Stephens (CA Bar No. 152071)
                                       Shannon M. Eagan (CA Bar No. 212830)
                                       Einat Sandman (CA Bar No. 234776)
                                       Five Palo Alto Square
                                       3000 El Camino Real
                                       Palo Alto, CA 94306
                                       (650) 843-5000


                                       By:_____/s/_____
                                            Michael J. Klisch (DC Bar No. 429711)

                                       Attorneys for Defendant
                                       KENT H. ROBERTS

**DEFENDANT'S MOTION TO TRANSFER VENUE (28 U.S.C. SECTION 1404(a))
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**

**Case No.
1:07CV00407 (EGS)**