# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

SECURITIES AND EXCHANGE     :
COMMISSION,     :
     :
     Plaintiff,     :
     v.     :     Case Number: 07-CV-00407 (EGS)
     :
KENT H. ROBERTS,     :
     :
     Defendant.     :
_____:

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

FACTS AND ARGUMENT ...........................................................................................1

    1.    Relevant Facts ...............................................................................2

    2.    Venue Standard .............................................................................5

    3.    Venue Lies in Both the District of Columbia and the Northern
        District of California .......................................................................5

    4.    The Interests of Justice Weigh in Favor of Retaining
        Venue in this District ......................................................................7

        a.    Private Interest Considerations Weigh in Favor of
            Maintaining Venue in This District ...........................................8

            i. Presumption Favor's SEC's Choice of Venue..........................8

            ii. The second and third private interest factors
               do not support transfer ......................................................10

            iii. The Northern District is <u>not</u> more convenient for
               the parties    16

            iv. This district, not California, is most convenient for <u>relevant</u> witnesses,
               and Defendant has offered no evidence of witness unavailability.........17

            v. Access to sources of proof does not support transfer .............................22

        b.    Public Interest Factors Militate Against Transfer......................................23

            i. Familiarity with the governing law does not support transfer ................23

            ii. Relative congestion of docket does not support transfer ........................25

            iii. The Northern District has no greater interest in deciding this
               controversy.......................................................................26

CONCLUSION.....................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Ainbinder v. Potter*, 282 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................10

*Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311 (D.D.C. 1991)........................................5

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960) ............................................24

*Davaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68 (D.D.C. 2005) ................................5, 7, 8

*Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669 (E.D.Pa. 1997).......................10

*FC Investment Group LC v. Lichtenstein,* 441 F. Supp. 2d 3 (D.D.C. 2006)...................22

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).....................................................................8

*Investors Funding Corp. v. Jones*, 495 F.2d 1000 (1974) ........................................6, 13, 14

*Kafack v. Primerica Life Insurance Co.*, 934 F. Supp. 3 (D.D.C. 1996)...........................26

*Kayachith v. Robinson*, 2004 WL 45502 (D. Minn. January 2, 2004) ...............................10

*Lee v. PlyGem Industrial, Inc.*, 593 F.2d 1266 (D.C. Cir. 1979)........................................6

*Livingston v. Weis, Voisin, Cannon, Inc.*, 294 F. Supp. 676 (D.N.J. 1968).......................6

*National Bank of Washington v. Mallery*, 669 F. Supp. 22 (D.D.C. 1987) ......................14

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
    No. 04-332-EGS, 2007 WL 420186 (Feb. 5, 2007) ..................................................5, 7

*Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C. Cir. 1980) ..............................5, 8

*Pyrocap International Corp. v. Ford Motor Co.*,
    259 F. Supp. 2d 92 (D.D.C. 2003).........................................................................9, 18

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000)............................23, 24, 26

*SEC v. American Land Co.*, No. 87-1453, 1987 WL 19930
    (D.D.C. Nov. 6, 1987)..............................................................................................8, 24

*SEC v. Capt. Crab, Inc.*, 655 F. Supp. 615 (S.D.N.Y. 1986)...............................................9

*SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53 (D. Conn. 1988),
    *aff'd sub nom. SEC v. Calvo*, 891 F.2d 457 (2nd Cir. 1989)..............................8, 9, 17

*SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991) ..................................9, 14, 17, 24

*SEC v. Hart*, No. 78-65, 1978 WL 1091 (D.D.C. May 26, 1978) ..............................14, 25

*SEC v. Johnson*, No. 05-36, 2007 WL 1541389 (D.D.C. May 24, 2007) ........................13

*SEC v. KPMG*, No. 03-Civ-671, 2003 WL 1842871
    (S.D.N.Y. April 9, 2003)..................................................................................9, 16

*SEC v. Savoy Industries, Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) ..............6, 8, 13, 14, 17, 25

*Schmidt v. American Flyers Airline Corp.*,
    260 F. Supp. 813 (S.D.N.Y. 1966)..................................................................15

*Shapiro, Lifshcitz & Schram, P.C. v. Hazard*,
    24 F. Supp. 2d 66 (D.D.C. 1998) ......................................................................11, 22

*Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.*,
    728 F. Supp. 6 (D.D.C. 1989) ..........................................................................26

*Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*,
    196 F. Supp. 2d 21 (D.D.C. 2002)................................................................5, 8, 22, 23

*Travis v. United States*, 364 U.S. 631 (1961) ..................................................13

*United States v. Lombardo*, 241 U.S. 73 (1916)................................................13

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ..................................................14

*Weinberger v. Tucker*, 391 F. Supp. 2d 241 (D.D.C. 2005) ........................................23, 24

## STATUTES, RULES AND REGULATIONS

Clayton Act, 15 U.S.C. § 22 ...............................................................................6

Securities Exchange Act of 1934
    Section 21, 15 U.S.C. § 78u(g)..................................................................14
    Section 27, 15 U.S.C. § 78aa ..................................................................5, 8

28 U.S.C. § 1404(a) ...........................................................................5, 15

N.D. Cal. Local Rule 3-2(c)..................................................................15

**MISCELLANEOUS**

S. Rep. No. 94-75 (1975), *reprinted in* 1975 U.S.C.C.A.N. 179......................................14

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3854 (2002) ..............................................................................14, 15

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this opposition to Defendant's Motion to Transfer Venue ("Memorandum").   In support of this opposition, the SEC relies on the following points and authorities and the Declaration of Paul Lane ("Lane Dec.") filed simultaneously herewith.

## FACTS AND ARGUMENT

Defendant's Memorandum distorts the relevant facts in an attempt to convince this Court that convenience dictates a transfer of this action to San Francisco.  In fact, it is telling that Defendant's Memorandum fails to mention that Defendant Roberts resides in Dallas, was based in McAfee's Texas offices, and that ***all*** or virtually all of the relevant documents in the company's possession are located in Texas, not California.  As explained below, contrary to the assertions in Defendant's Memorandum and the Declaration of William S. Freeman ("Freeman Dec."), the majority of relevant witnesses reside in locations more convenient to this District, relevant documents in this matter are *not* located in California, and Defendant's other rationales for transfer are without merit.

In addition, judicial efficiency will not be served by transferring this action to a jurisdiction where no party resides.  Nor is transfer justified based on the existence of three allegedly "related" actions pending before three different judges, with different parties, issues, discovery rules and burdens of proof.  In fact, the derivative action mentioned repeatedly by Defendant has not passed the pleading stage and no discovery has been taken over a year after that case was filed.  Moreover, Defendant does not even suggest that this case should be transferred to the judge in that case.  Further, this matter cannot be consolidated or coordinated with the private action or the criminal action.

Accordingly, Defendant has not met his substantial burden that a transfer of this action is in the interest of justice.

### 1. Relevant Facts

The Complaint alleges that Defendant Roberts, former General Counsel, Corporate Secretary, and Executive Vice-President of McAfee, Inc., formerly known as Network Associates, Inc. ("McAfee"),[1] engaged in a fraudulent scheme to enrich himself and others by illicitly changing the dates on which stock options awards had been granted to coincide with lower closing prices of McAfee's common stock, resulting in disguised "in-the-money" option grants. As part of this fraudulent conduct, Roberts falsified company documents to make it appear that McAfee's Compensation Committee had approved the option grants on the favorable dates that Roberts had chosen.

In fact, a key aspect of Roberts' fraud on investors occurred through filings made with the Commission by McAfee and Roberts, which Roberts knew, or was reckless in not knowing, contained false information and omitted material information concerning his option grant and grants to other McAfee officers. Roberts also made false statements concerning the true grant dates and proper exercise prices for his own stock options in stock ownership reports that he filed with the Commission. It is principally through his filings with the Commission, or filings prepared or signed by him, that Roberts misled the

---

[1]     McAfee, a Delaware corporation, is a multinational corporation. Although the company's headquarters are in Santa Clara, California, only approximately 200 employees work in that office. By contrast, the company's regional office located in Plano, Texas, which opened in January 2003, employs approximately 700 employees working in customer support, engineering, accounting and finance, information technology, internal audit, legal, and telesales. McAfee also has a European headquarters located in Cork, Ireland, and other international facilities located in Germany, India, Ireland, Japan, the Netherlands, the United Kingdom, and Singapore. At all relevant times, Defendant Roberts was employed by McAfee's legal department based in Dallas or Plano, Texas. (Lane Dec. ¶ 4.)

public.  These filings all were made with the Commission's headquarters in Washington, D.C., for dissemination to the investing public.

In addition, the so-called "facts" relied upon by Defendant on pages 2-3 of his Memorandum are either incorrect or, when put in context, indicate that a transfer is not warranted.  First, Roberts omits that during his tenure with McAfee he was at all times based either in the company's Dallas, Texas, or Plano, Texas offices where the legal department was based.  (Lane Dec. ¶ 5.)  Second, far from relating "nearly exclusively to events occurring in Northern California," actions relevant to this proceeding occurred in Texas, New York, and Washington, D.C., and involved witnesses who are, and were at the time, scattered around the country.  Indeed, at no time was Defendant a resident of Northern California.  (Lane Dec. ¶¶ 11, 14.)

Third, the vast majority of witnesses who possess ***relevant*** information reside outside of California and predominantly on the East Coast.  (Lane Dec. ¶¶ 11, 14-18, 21-23, 25-26.)  Fourth, most of the relevant documents are *not* maintained in the Northern District of California but rather at the company's Plano, Texas offices.  Having served as McAfee's General Counsel until last year, Defendant is undoubtedly aware that McAfee moved most of its critical functions from Santa Clara to McAfee's Plano, Texas offices in 2003.  (Lane Dec. ¶ 7.)  Fifth, the SEC's investigative file, including all documents received from McAfee – which Defendant will undoubtedly seek in discovery – is located in Washington, D.C., where all staff involved in this case are located.  (Lane Dec. ¶ 3.)

Sixth, the location of the criminal action is not relevant.  The legal standards are different in this action than in the criminal case, the SEC has a broader venue provision than the Department of Justice and, unlike the U.S. Attorney's Office for the Northern

District of California, which brought the criminal action, the SEC staff that investigated this case is based in the SEC's Washington, D.C., offices where Roberts' false documents were filed. In fact, SEC actions are routinely litigated in jurisdictions other than where the Justice Department brings criminal cases. (Lane Dec. ¶ 9.) Seventh, this action would not be consolidated with the other actions pending in Northern California (one of which is in state court, and all of which are before different judges), and the defendants and issues in those actions differ significantly from the instant action.

Finally, the fact that numerous companies in Northern California have options backdating problems is irrelevant. This case is factually distinct, based on Mr. Roberts' misconduct alone, which culminated in fraudulent filings with the Commission. Although the subject matter of Mr. Roberts' fraud and other violations revolves around manipulation of option grants, this case does not involve the same issues as most of the cases to which Roberts' Memorandum alludes.

Thus, the Commission disputes Defendant's characterization of the relevant facts and witnesses and his effort to overstate the connection to the Northern District of California, where Defendant does not even reside. The only apparent convenience for Defendant to litigate in that District is that his lawyers are located there (not a relevant factor), even though his lawyers maintain an office in this District as well. Not only has Defendant failed to overcome his heavy burden to overturn the Plaintiff's choice of forum, but the objective facts demonstrate that the Commission had good reason to choose this District.

### 2.   *Venue Standard*

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The burden is on the party seeking transfer to demonstrate that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor."  *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (*quoting Armco Steel Co. v. CSX Corp.*, 790 F. Supp 311, 323 (D.D.C. 1991)).

This Court recently held that a defendant must make two showings in order to justify a transfer: (1) that the plaintiff originally could have brought the action in the proposed transferee district; and (2) that considerations of convenience and the interests of justice weigh in favor of transfer.  *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332-EGS, 2007 WL 420186, at *1 (Feb. 5, 2007) (citing *Davaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71-72 (D.D.C. 2005)).  The defendant bears a heavy burden in asking a district to overturn the plaintiff's choice of forum.  *Thayer/Patricof*, 196 F. Supp. 2d at 36 (citing *Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980)).  The Commission does not dispute that it could have brought the action in the Northern District of California, but considerations of convenience and the interests of justice weigh strongly in favor of the Commission's choice of venue in this District.

### 3.   *Venue Lies in Both the District of Columbia and the Northern District of California*

In his "Relevant Allegations" section, Defendant wrongly asserts that the SEC's venue allegation is either improper or questionable.  (Memorandum at 6-7.)  First, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, is a valid basis for venue because

Roberts *transacts* business in this District within the meaning of the statute. The Complaint alleges that Defendant helped to prepare and signed McAfee's 2002 and 2003 proxy statements, filed with the Commission, which contained false information and material omissions concerning option grants, and that he made false statements concerning his options in stock ownership reports filed with the Commission. Defendant's hyperliteral interpretation of the "transacts business" test has been rejected by this Circuit. *See Lee v. Ply*Gem Indus., Inc.*, 593 F.2d 1266, 1271-73 (D.C. Cir. 1979) (holding in the context of the identical venue provision in the Clayton Act, 15 U.S.C. § 22, that "the temporal frame of reference of that section is the point at which the cause of action arises, not the date suit is commenced."); *Livingston v. Weis, Voisin, Cannon, Inc.*, 294 F. Supp. 676, 683 (D.N.J. 1968) (applying a Supreme Court case's interpretation of the Clayton act's venue requirement to establish that a defendant "transacted business" within the meaning of Section 27).

Defendant's suggestion that venue in this District is questionable based on Roberts' false filings with the SEC is similarly mistaken. On the contrary, the law is clear that this district is an appropriate forum for false-filings cases. *See SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (holding that "the act of filing has a locus in the District of Columbia," thus "venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia, is here.") (citing *Investors Funding Corp. v. Jones*, 495 F.2d 1000, 1003 (D.C. Cir. 1974)).

The Commission does not dispute that it could have brought the action in Northern California, but it strongly disagrees that "all of the alleged improper acts occurred at Company headquarters in the Northern District." (Memorandum at 9.)

Indeed, Defendant's statements about where he was based while employed at McAfee are misleading. Although he maintained a temporary office in California, and some underlying facts occurred in California, at all relevant times Roberts was based in and worked primarily out of Dallas or Plano, Texas. (Lane Dec. ¶¶ 5, 11.) Accordingly, it is far from apparent that his misconduct occurred in California. On the contrary, numerous acts forming the basis for the SEC's action – and other facts central to its case – likely occurred in Texas, New York and Washington, D.C., and few relevant witnesses to these facts reside in Defendant's proposed forum.

### 4. *The Interests of Justice Weigh in Favor of Retaining Venue in this District*

In *Oceanic Exploration*, the Court enumerated six private-interest factors and three public-interest factors in determining whether considerations of convenience and the interests of justice weigh in favor of transfer. The private-interest factors include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses, but only to the extent witnesses may be unavailable for trial in the original forum; and (6) the ease of access to proof.

2007 WL 420186, at *2 (citing *Devaughn*, 403 F. Supp. 2d at 72). The public interest considerations include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id*. at *5.

*a.  Private Interest Considerations Weigh in Favor of Maintaining Venue in This District*

*i.  Presumption Favor's SEC's Choice of Venue*

A plaintiff's choice of venue should rarely be disturbed unless the balance is strongly in favor of the defendant.  *Thayer/Patricof,* 196 F. Supp. 2d at 36 (*citing Pain* 637 F.2d at 783 (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))).  Relying on a case involving a different statutory scheme and inapposite facts, Defendant argues that the SEC's choice of forum should not be entitled to deference.  (Memorandum at 10.)  Defendant cites to no case in this jurisdiction or involving the SEC that supports its assertion that the SEC's choice of forum is not entitled to deference.

The law in *this* jurisdiction is that the presumption in favor of the plaintiff's choice of forum applies in cases arising under the federal securities laws because of Section 27 of the Exchange Act, 15 U.S.C. § 78aa, the special venue statute pursuant to which this case was filed.  *Thayer/Patricof,* 196 F. Supp. 2d at 37 n.9 (due to Section 27, presumption is "stronger in cases arising under the federal securities laws"); *see also Savoy Indus.*, 587 F.2d at 1155-56 (noting that courts have found presence of special venue statute is relevant factor, rejecting location of SEC field office in another jurisdiction as compelling, and recognizing convenience of SEC as a relevant factor); *SEC v. American Land Co.*, No. 87-1453, 1987 WL 19930, at *1 (D.D.C. Nov. 6, 1987) (denying motion to transfer venue to where defendants reside, noting that transfer requests should be viewed warily when venue is based on Section 27 of the Exchange Act, and also stating that cases involving SEC filings are properly brought in the District of Columbia).  Other courts have also recognized that the SEC's choice of forum is entitled to deference.  *See, e.g., SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53, 74

(D. Conn. 1988) ("The venue provision of the [Exchange] Act represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue."), *aff'd sub nom. SEC v. Calvo*, 891 F.2d 457 (2nd Cir. 1989); *SEC v. KPMG*, No. 03-Civ-671, 2003 WL 1842871, at *3 (S.D.N.Y. April 9, 2003) (citing *SEC v. Capt. Crab, Inc.*, 655 F. Supp. 615, 617 n.1 (S.D.N.Y. 1986)).

Plaintiff chose this forum in part because it is most convenient for the most witnesses with relevant information (discussed *infra* at § 4.a.iv), more convenient for the SEC staff who are located in this district, the SEC's documents are located in this district, and it is even closer to both parties than Defendant's choice of forum. Inconvenience of travel is no less relevant for SEC staff than it is for Defendant. *See Electronics Warehouse*, 689 F. Supp. at 75 (finding location of SEC field office in proposed transferee forum not compelling and respecting SEC's choice of which forum is more convenient). Where the SEC shows that its choice of forum is dictated by convenience, its choice is entitled to substantial deference. *See KPMG*, 2003 WL 1842871, at *4.

In addition, Defendant's reliance on *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92 (D.D.C. 2003) and *SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991) do not support transfer here. In *Pyrocap*, there were no underlying facts that occurred in this District, 259 F. Supp. 2d at 96, which is not the case here. Also, the court found that the government agencies based in this District had no involvement with facts central to the case. *Id.* Here, the SEC, based in Washington, D.C., is the plaintiff and all staff working on the case are located here. Similarly, although the court in *Ernst & Young* found that transfer was appropriate, the SEC did not dispute the location of underlying events or that the majority of relevant fact witnesses resided in Texas. 775 F.

Supp. at 414-15.  Here, the SEC vigorously disputes Defendant's characterization of where events occurred and where relevant witnesses reside.  Further, this District has a strong interest in adjudicating cases involving false filings with government agencies located here.

Also, because few of the traditional reasons for transfer actually exist here, Defendant's Memorandum repeatedly argues that the existence of widespread options backdating in California is somehow relevant to the issues raised in this action.  This case is a simple fraud in which Defendant falsified company documents to enrich himself and others, and made false filings with the SEC.  No specialized knowledge of options is required to understand Defendant's fraudulent conduct, which is as much about false SEC filings as it is about stock options.  The fact that numerous companies in California may have backdated their options is irrelevant to the facts and issues raised in this action.

### ii.  *The second and third private interest factors do not support transfer*

Neither the Defendant's choice of forum nor the location where the claim arose supports transfer.  As an initial matter, Defendant's choice of forum should not be entitled to deference because he does not reside in that district.  *See Ainbinder v. Potter*, 282 F.Supp.2d 180, 191 (S.D.N.Y. 2003) (denying defendants' motion to transfer venue in part because defendants did not reside in proposed transferee district); *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 679 (E.D. Pa. 1997) (denying transfer in part because two of three defendants did not live in proposed transferee district making the current forum just as convenient for those defendants); *Kayachith v. Robinson*, 2004 WL 45502, at *1 (D. Minn. Jan. 2, 2004) (where defendant does not reside in proposed transferee forum, defendant will necessarily be inconvenienced, so this factor does not

support transfer to simply shift inconvenience to plaintiff). In fact, Defendant's Memorandum states no reason why he would be inconvenienced by maintaining the action in this District. *See Shapiro, Lifshcitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 72 (D.D.C. 1998) (denying transfer where defendants' choice of forum (California) also connected to events underlying action, defendants resided in California, and conduct at issue occurred in California but finding connections no more significant than those to D.C., and also finding that both parties would face significant inconvenience in the competing forum).

The facts and circumstances relevant to the SEC's claims occurred in the District of Columbia, Texas, New York and California. As such, this factor does not support Defendant's heavy burden for a transfer away from Plaintiff's forum of choice. Once again, Defendant's description of the factual connection of this action to the Northern District of California is inaccurate. Although it is true that some of the meetings relevant to this case took place in California, most relevant witnesses who would testify about those events reside on the East Coast. For instance, all of the relevant option grants at issue were approved by Virginia Gemmell (Virginia resident), Edwin Harper (Colorado resident) and/or Robert Dutkowsky (residence on the East Coast), and Roberts confessed to his misconduct related to his 2000 option grant during a meeting in New York with George Samenuk, Dennis O'Leary, and Robert Dutkowsky, all residents of East Coast states. (Lane Dec. ¶¶ 11, 14-18.)

In addition, Defendant wrongly states that: "McAfee conducted an internal investigation into its stock option practices within and from the Northern District of California." (Memorandum at 12.) Roberts was the General Counsel of McAfee when

the internal review into stock options practices that ultimately led to Defendant's termination began.  Roberts, who was heading up the internal review, was aware that it was being conducted predominantly in Plano, Texas.  (Lane Dec. ¶ 7.)  Apparently fearing that his fraudulent conduct was about to be revealed, Mr. Roberts flew from Texas, where he lived and worked, to New York, where the McAfee shareholder meeting was scheduled to take place, and confessed his wrongdoing to three McAfee Board members – all of whom reside on the East Coast – that he changed the date and exercise price of his 2000 option grant.  (Lane Dec. ¶ 19.)

Defendant further asserts that: "Several key Board of Directors and Compensation Committee meetings occurred at McAfee's company headquarters in Santa Clara, and presumably minutes and records of such meetings can be found there."  (Memorandum at 12.)  However, Defendant fails to acknowledge that numerous Board and Compensation Committee meetings also were held telephonically, in New York, or in Plano, Texas. (Lane Dec. ¶ 8.)  In fact, since January 2002, fewer than half of the Board Meetings took place in Santa Clara, California, only one such meeting has taken place in Santa Clara since July 2005, and many of the relevant witnesses to those meetings are located on the East Coast.  (Lane Dec. ¶¶ 8, 14, 17.)[2]  In addition, Defendant's so-called presumption about where Board minutes and records are kept is untrue.  Defendant, in his capacity as General Counsel and Corporate Secretary, kept the Board minutes in his offices in Plano, Texas.  (Lane Dec. ¶ 5.)

---

[2]     The Declaration of William S. Freeman ("Freeman Dec.") at ¶ 4 states that his opinion regarding the location of Board meetings is based, in part, on documents received from the SEC. The SEC has not produced any documents to Defendant to date and has no knowledge of the discovery that has taken place in the criminal action.  (Lane Dec. ¶ 3.)

Defendant also asserts that, "Not a single one of the alleged wrongful acts underlying the supposedly misleading filings occurred in this District." (Memorandum at 12.) As explained in Section 3, *supra*, making a false filing with the SEC is an act that occurs in this District. *See Savoy Indus.*, 587 F.2d at 1154-55 (holding that "the act of filing has a locus in the District of Columbia," thus "venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia, is here.") (citing *Investors Funding Corp.*, 495 F.2d at 1003).

In fact, the D.C. Circuit in *Savoy Indus.* rejected substantially identical arguments. There, the appellant, Zimmerman, was charged, like Defendant here, with violations of the reporting and anti-fraud provisions of the federal securities laws. Appellant argued first that none of the operative facts occurred in the District of Columbia. *Savoy Indus.*, 587 F.2d at 1155. After noting that three corporate filings had been made with the SEC, the Court found that "[i]t is plain, contrary to appellant's assertions, that some of the operative facts did occur within the District of Columbia." *Id.* The Court similarly dispatched Appellant's related argument, also made by Defendant here, that filings are relatively insignificant events for purposes of venue. *Id.* "Both the Supreme Court and this court have held that the place where a document is to be filed may be regarded as the place where any asserted non-filing or misfiling occurred." *Id.* (citing *Travis v. United States*, 364 U.S. 631, 636 (1961)); *United States v. Lombardo*, 241 U.S. 73 (1916); *Investors Funding Corp.*, 495 F.2d at 1002-03. This principle was recognized recently in *SEC v. Johnson*, No. 05-36, 2007 WL 1541389, at *2 (D.D.C. May 24, 2007) (slip op.) ("It is well-settled that the filing of documents with the SEC has a locus in the District of

13

Columbia and establishes venue here.") (citing *Savoy Indus.*, 587 F.2d at 1155); *see also Ernst & Young*, 775 F. Supp. at 413.

Finally, the existence of allegedly related actions pending in Northern California deserves no weight here. The key factor when considering the weight to be given to the pendency of a similar action in another forum is whether the actions can be consolidated. The mere existence of a similar action itself is meaningless. Rather, it is the feasibility of consolidation and the benefits arising therefrom that make this factor relevant to a transfer motion. *See Van Dusen v. Barrack*, 376 U.S. 612, 644 (1964). The existence of a related case elsewhere does not weigh in favor of transfer "if there is no realistic possibility of consolidating the present case with the related case." *See Nat'l Bank of Washington v. Mallery*, 669 F. Supp. 22, 29 (D.D.C. 1987) (quoting *Federal Practice and Procedure*: Jurisdiction § 3854).

Clear Congressional intent requires that Commission enforcement proceedings not be tied in any way to private securities litigation. *See* 15 U.S.C. § 78u(g) (prohibiting consolidation and coordination of Commission enforcement actions with private suits absent the Commission's consent); *see also* S. Rep. No. 94-75, at 77 (1975), *reprinted in* 1975 U.S.C.C.A.N. 179, 255-56 (explaining why transfer of enforcement action for coordination and consolidation" is potentially damaging to the public interest"). Where, as here, there is no possibility of consolidation (because the Commission will not consent), pendency of private actions in another venue should be accorded no weight. *SEC v. Hart,* No. 78-65, 1978 WL 1091, at *2 (D.D.C. May 26, 1978) ("[I]t is readily apparent that even if this case was transferred it could not be consolidated with the private civil action without the SEC's consent."); 15 Charles Alan Wright, Arthur R.

Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3854 (2002) (citing

*Schmidt v. American Flyers Airline Corp.*, 260 F. Supp. 813 (S.D.N.Y. 1966)).

In addition, each of the three actions to which Defendant refers are pending

before different judges[3] – a criminal case before Judge Patel, a consolidated derivative

action before Judge Fogel, and another action in state court.  The fact that the criminal

action was not transferred to Judge Fogel belies the notion that they are "related" under

the local rules of that court.  (*See* Defendant's Motion For Judicial Notice ("MJN"), Tabs

A-D.)  The criminal case involves completely different discovery rules and a different

burden of proof, thus there is no risk of inconsistent verdicts (*i.e.,* even if Defendant is

acquitted, he can be found liable in this action).  Thus, even if the three actions were

pending before the same judge, that factor is less relevant here because the plaintiffs in

the "related" criminal and civil proceedings have greater burdens of proof than the SEC

bears in this civil enforcement action.  Also, the conduct of the derivative litigation will

be substantially different:  the derivative action seeks completely different remedies

based on completely different law and proof, involves twenty-four defendants not named

in this action, and only a small percentage of the conduct alleged there is alleged here.

---

[3]    Defendant actually proposes transferring the case to a specific District Judge, which is
beyond the power of this Court under 28 U.S.C. § 1404(a) ("a district court may transfer any civil
action to any other *district or division* where it might have been brought.") (emphasis added).
There is nothing in the Local Rules of either this Court or the Northern District of California that
indicates this case will go to Judge Patel.  On the contrary, it appears likely that this action, if
brought in that District, would be assigned not to Judge Patel but to a judge in San Jose, the
division where cases arising in Santa Clara County are assigned.  *See* Northern District of
California Local Rule 3-2(c) (civil actions shall be assigned to the courthouse for the county "in
which a substantial part of the events or omissions which gave rise to the claim occurred").

*Compare* Complaint in this action *with* MJN, Tab B (derivative complaint totaling 85 pages).[4]

The court in *SEC v. KPMG* addressed and rejected arguments substantially similar to those Defendant raises here:

> The SEC points out that none of the Connecticut Actions that arise from the events at issue in the Complaint have moved beyond the pleading stage, despite their pendency for many months or years. The SEC also points out that, while most of the litigation in Connecticut arises from the same or similar underlying facts, the conduct of the litigation will be substantially different. . . . And, since the securities laws impose in some important respects greater burdens on private plaintiffs than on the SEC, the difference in plaintiffs will have a noticeable effect on the course of the litigation. In addition, the court presiding over the SEC action will not be faced with a motion to certify a class. A substantial investigation has already been undertaken in the SEC case and can be expected to have a dramatic impact on the conduct of discovery in its case. There will be no consolidation of this case and the Connecticut Actions for discovery or any other purpose. *See* 15 U.S.C. § 78u(g). As the defendants acknowledge, their motion cannot be premised on any claim that a transfer will result in efficiencies to be derived from coordinated or consolidated discovery. The SEC's mission and the relief it seeks in this action also suggest that it should be litigated on a track appropriate to this litigation, which may be different from that appropriate to the related private litigation.

2003 WL 1842871, at *5.[5]  Indeed, Defendant has not even requested that this case be transferred to the judge handling the derivative action.

### iii.  The Northern District of California is <u>not</u> more convenient for the parties

Defendant, who resides in Texas, argues that the Northern District of California is more convenient for the parties.  As a Texas resident who will have to travel regardless of

---

[4]      Of course, there can be no judicial efficiency in proceeding in the same jurisdiction as a state court action in a different county from the proposed transferee court.  (*See* MJN, Tab D.)

[5]      The only factual difference between this case and *KPMG* is that Defendant is also a defendant in the derivative case, although the other twenty-four defendants are *not* parties to this case.  In addition, the derivative action involves a host of legal issues and factual events neither alleged in nor relevant to this case.  As a result, it is doubtful that there will be many similarities, if any, in the course of discovery and other proceedings between these two cases.

16

which forum this case will be litigated in, Defendant's claim that Northern California is more convenient rings hollow. *See* cases cited *supra* in § 4.a.ii; Lane Dec. at ¶¶ 12, 13 (showing that this district is closer and cheaper to fly to than San Francisco).[6]  As discussed above, this forum is more convenient for Plaintiff.  Defendant's argument that the presence of an SEC regional office in the proposed transferee district will minimize inconvenience to the SEC for an investigation conducted out of Washington, D.C., has been widely rejected.  *See, e.g., Savoy Indus.*, 587 F.2d at 1156 (rejecting existence of a Commission field office as a compelling factor for transfer motion); *Ernst & Young*, 775 F. Supp. at 415 (rejecting relevance of SEC field office where case investigated by staff located in Washington, D.C.); *Electronics Warehouse*, 689 F. Supp. at 75 (rejecting relevance of SEC field office in proposed transferee forum where relevant investigative staff located near filing district).  Finally, the existence of three allegedly relevant actions pending before three different judges in Defendant's proposed forum does not make that forum any more convenient for Defendant, a resident of Texas, when discovery, hearings and trials will not be coordinated between this action and the other actions.

> ### iv.  This district, not California, is most convenient for <u>relevant</u> witnesses, and Defendant has offered no evidence of witness unavailability

In an attempt to establish Northern California as the most convenient forum, Defendant compiles a list of all conceivable witnesses who live in or near that district and labeled them "relevant."  Curiously, Defendant does not include himself as one of the 21 witnesses critical to the resolution of this action.  None of the recipients of option grants

---

[6]      Trying to bootstrap other factors such as witness convenience to support transfer for the convenience of the parties provides no help to Defendant.  Although witness convenience is a relevant factor, Defendant does not explain why location of witnesses should weigh in his favor as to this factor, which Plaintiff addresses in the next section.

at issue in the Complaint reside in California. (Lane Dec. ¶¶ 11, 16, 26.) Instead, Defendant focuses solely on location without regard to the potential relevance of each witness's testimony, although many witnesses on Defendant's list are unlikely to offer probative testimony. (Lane Dec. ¶¶ 27-31.)

Nonetheless, a majority of truly relevant witnesses are located closer to this District – a primary reason why Plaintiff filed here – and few, if any, of the most relevant witnesses are located in California.[7] (Lane Dec. ¶¶ 5, 23.) *See Pyrocap Int'l Corp.*, 259 F. Supp. 2d at 97-98 (in case cited by Defendant, court noted preference for live testimony from witnesses with personal knowledge whose credibility could be at issue, not testimony tangential to the central issues). Although Plaintiff may ultimately call one or more witnesses from California, Plaintiff presently believes that *none* of the nine most important witnesses reside within the Northern District of California. Conversely, seven of the nine most important witnesses live on the East Coast, and three of them reside in Virginia (within the subpoena power of this court).[8]

The Complaint alleges Defendant's participation in manipulation of and false statements related to three option grants: (1) Defendant's fraudulent re-dating and re-pricing of his own option grant in 2000 (Compl. ¶¶ 13-18); (2) Defendant's improper re-pricing and re-dating of an option grant to McAfee's then-CEO (George Samenuk) in 2002 (Compl. ¶¶ 19-24); and (3) Defendant's false disclosures concerning a grant to a

---

[7] Plaintiff has not spoken to most of the people discussed in Defendant's Memorandum. Accordingly, Plaintiff cannot say whether it would call any of these people as witnesses. Plaintiff, however, does not believe most of those witnesses are crucial to its case-in-chief based on the information available to it at this time, the description of their relevant knowledge as described in the Freeman Declaration, and based on its investigation.

[8] The nine witnesses referred to herein include: Defendant Roberts (Texas), George Samenuk (Connecticut), Art Matin (Connecticut), Robert Dutkowsky (Florida), Denis O'Leary (New York), Virginia Gemmell (Virginia), Eric Brown (Virginia), Robert Bucknam (Virginia), Edwin Harper (Colorado), and Defendant Roberts (Texas).

McAfee Division President (Art Matin) in 2002 (Compl. ¶¶ 28-36).  The three most crucial witnesses involving those option grants are the grant recipients:  Kent Roberts, who resides in Texas, George Samenuk, who resides in Connecticut, and Art Matin, who resides in Connecticut.  (Lane Dec. ¶¶ 11, 16, 26.)  None reside in California.

Regarding Defendant's own option grant, the Complaint alleges that Roberts confessed his misconduct to McAfee's then-CEO (Samenuk) and two other Board Members (Compl. at ¶ 17).  In May 2006, shortly after McAfee had begun an internal investigation into its stock option practices, Roberts flew from Texas, where he worked and resided, to New York, where the McAfee annual meeting was taking place, and confessed to three Board Members that he had changed the grant date and exercise price of his 2000 option grant.  *Id*.; (Lane Dec. ¶ 19.)  The Board Members to whom Roberts confessed are George Samenuk, who lives in Connecticut, Robert Dutkowsky, who lives in Florida, and Denis O'Leary, a resident of New York, New York.  (Lane Dec. ¶¶ 16, 17, 18.)  None of these witnesses reside in California.

The most relevant witnesses regarding the date of the options grants are the members of the Compensation Committee of the Board who approved the option grants.  At the time of Defendant's 2000 option grant, the only members of the Compensation Committee were Virginia Gemmell, a resident of Alexandria, Virginia (and within the subpoena power of this Court), and Edwin Harper, a resident of Fort Collins, Colorado.[9]  (Lane Dec. ¶¶ 14-15.)  In 2002, the Compensation Committee consisted of Gemmell

---

[9]    Defendant includes Mr. Harper as one of the persons who resides "near California."  Memorandum at 14-17.  The Court can take judicial notice that Fort Collins, Colorado, nearly 1200 miles from Santa Clara or San Francisco, is not "near" California.  Mr. Harper would be required to take a significant plane ride to either jurisdiction.

(Virginia), Harper (Colorado), and Robert Dutkowsky (New York).  (Lane Dec. ¶¶ 14-15, 17.)  None of these witnesses reside in California.

Next, a Special Committee of the Board conducted an internal investigation of McAfee's stock options practices.  To the extent witnesses would testify about that investigation, the Special Committee includes Robert B. Bucknam (resident of Alexandria, Virginia – within subpoena power of this Court), Dale Fuller (resident of Menlo Park, California), and Chuck Robel (resident of Menlo Park, California).  (Lane Dec. ¶ 23.)  To prevent cumulative evidence, it is likely that only one of these witnesses would be necessary at trial, and one resides within the scope of the compulsory subpoena power of each of the forums at issue here.  In addition, the internal review was conducted out of the company's Plano, Texas offices, where all of the relevant files are located.  (Lane Dec. ¶¶ 6-7.)  To the extent members of the company's internal audit group would be relevant witnesses, California is no more convenient for them than Washington, D.C.  (Lane Dec. ¶¶ 12-13; Memorandum at 14n.6.)   Further, Eric Brown, McAfee's chief financial officer, signed the company's Current Report on Form 8-K announcing the company's decision to revise the grant date for the Samenuk grant.  Mr. Brown would testify to the company's decision about this and the company's conclusions about other grants at issue.  (Lane Dec. ¶ 22.)  He is a resident of Northern Virginia and commutes to the company's Plano, Texas offices.  (Lane Dec. ¶ 22.) [10]

Many other witnesses listed by Defendant simply are not relevant based on Defendant's description of their intended testimony.  It is unlikely that seven witnesses

---

[10]    Defendant is the most important witness to his role in the false or misleading filings made with the SEC.  One or more McAfee current or former employees may also be called to testify, although the Commission does not know who that would be at present.  In addition, to the extent the actual filing of the documents is at issue, witnesses would likely be Commission employees located in Washington, D.C. or Alexandria, Virginia.

need to testify about the company's stock options practices, or that nine witnesses need to testify about "the practices of McAfee's Board and its delegation of responsibility to management" or "management's interaction with the Board." (Memorandum at 15-19.) Listing every former Board Member who resides in California accounts for most of the so-called "relevant" witnesses located "in or near California." (*Id.*) Witnesses already discussed by Plaintiff above can testify adequately about these subjects, to the extent relevant. For example, no Compensation Committee members who approved the relevant options grants reside in California. Because all of the Compensation Committee members were Board Members, they are all competent to testify about any practices of the Board or its interactions with management. Defendant's list of "relevant" witnesses would lead to excessive, cumulative evidence and an unduly long trial.

Plaintiff does not dispute that some of the additional witnesses listed by Defendant may possess relevant information even if they are not essential witnesses at trial.[11] For example, Sylvia Garcia-Lechelt (former Senior V.P. of Human Resources and a California resident) and Terry Davis (former Controller and a resident of Portland, Oregon) may be able to testify about some of the option grants at issue. Based on Defendant's description of relevant testimony by each witness, however, it is apparent that many of these other witnesses are not truly relevant and their availability to testify does not warrant transferring this case. Some of those include: Leslie Denend (not member of Compensation Committee), Richard Hornstein (left company in early 2000 with no apparent role in options grants), Enzo Torresi (left in 2001 and never member of

---

[11]     Defendant wrongly asserts that four McAfee Board Members regularly travel to the Northern District of California because of their role as Board Members. Memorandum at 17. Although the McAfee Board must meet at least four times annually, only one of the Board's meetings since July 2005 took place in California, and the overwhelming majority of meetings take place telephonically or in New York. (Lane Dec. ¶ 8.)

Compensation Committee), Peter Watkins (never attended any board meetings), and Vernon Hodges (never Board Member and never attended compensation committee meetings). (Lane Dec. ¶¶ 27-31.) What is clear, however, is that the overwhelming majority of necessary and relevant (and non-cumulative) witnesses reside closer to this District, within the subpoena power of this Court, and/or outside of Northern California.

Finally, Defendant does not identify a single witness who has refused to testify in this district. *See FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006) (denying transfer and stating that, unless a defendant shows that witnesses are unwilling to testify in the District of Columbia, it will be assumed that witnesses will voluntarily appear); *Thayer/Patricof*, 196 F. Supp. 2d at 33 (denying transfer in part because defendant provided no evidence of any witness unwilling to appear in the District of Columbia); *Hazard*, 24 F. Supp. 2d at 72 (denying transfer where defendant, whose strongest argument was that the current forum was inconvenient for important third-party witnesses outside subpoena power of court, did not suggest that they would refuse to appear if the trial was held in the District of Columbia). Accordingly, this factor strongly favors maintaining this action in this District.

### v. *Access to sources of proof does not support transfer*

Defendant's assertion about the location of relevant documents in his argument over access to sources of proof is disingenuous. Defendant, as McAfee's former General Counsel, is well aware that most, if not all, of the documents relevant to this case are

located in Plano, Texas. (Lane Dec. ¶¶ 5-8, 11).[12] Accordingly, a transfer to the Northern

District of California will not help anyone to access sources of proof more readily.

### b. Public Interest Factors Militate Against Transfer

#### i. Familiarity with the governing law does not support transfer

As Defendant points out, neither district is presumed to be more familiar with

federal law, so this factor is neutral. Instead of conceding this obvious point, however,

Defendant tries to conflate this factor with private interest factors to re-argue that the

presence of so-called "related" cases in California favors transfer. Because both courts

are equally familiar with federal law, this factor does not favor transfer.

Defendant's reliance on *Weinberger v. Tucker*, 391 F. Supp. 2d 241 (D.D.C.

2005) and *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48 (D.D.C. 2000) is misplaced.

(Memorandum at 23.) In *Weinberger*, this Court held that the interests of justice

supported transfer of a private, civil suit to the district court that *had already reviewed*

*and decided* prior litigation between the same parties and their privies primarily because

that case turned on the preclusive effect of the transferee court's judgment. *See*

*Weinberger*, 391 F. Supp. 2d at 245. Similarly, *Reiffin* arose out of the same transaction

involving the same parties, facts, and legal issues as an action already decided in another

district. Thus, transfer was appropriate because the transferee court had "already

expended substantial time and effort to become familiar with the technology underlying

the disputed patents, the prosecution of the patents, the record considered by the Patent

Office in issuing the patents, and the legal issues related to the patents' alleged validity

---

[12]     Even if documents were located in California, the location of documents factor is neutral. Given modern technology, the location of documents is less important in determining the convenience of the parties. *Thayer/Patricof,* 196 F. Supp. 2d at 36.

and infringement." *See Reiffin*, 104 F. Supp. 2d at 55.  Also, in both those cases the plaintiffs not only sought to re-litigate issues decided in the prior cases, they also asserted that the defendant's conduct in the preceding litigations constituted additional wrongful acts. *See Weinberger*, 391 F. Supp. 2d 244-45; *Reiffin*, 104 F. Supp. 2d at 53-55.[13]

Clearly, the rationale employed in those cases does not apply to the instant case where there has been no prior litigation decided, and this case does not turn on the preclusive effect of any court's judgment.  There are no complex and technical issues involved here, nor has there been one judge in the transferee forum that is extensively familiar with the parties, facts, and issues at hand.  Any interests of judicial economy are further minimized where the other pending actions raise issues and/or involve parties not present here, are pending before different judges, and cannot be consolidated with this action. *See Ernst & Young*, 775 F. Supp. at 416; *see also American Land Co.*, 1987 WL 19930, at *2 (denying transfer to a District where there was another SEC action pending against the defendant because the court was uncertain that the actions would be consolidated or otherwise assigned to the same judge).

Defendant's continued reliance on statistics relating to "the options backdating issue nationally" is specious at best.  (Memorandum at 23.)  Defendant neither points to any unique legal or factual issues in this case making other options backdating cases relevant nor claims that any of these other cases are pending before either of the judges before whom his allegedly "related" cases are pending.  So, it is unclear how any judicial efficiency is linked to excessive options backdating by other California companies.  The

---

[13]     Defendant's reliance upon *Continental Grain Co. v. The FBL-585*, suffers from a similar infirmity.  364 U.S. 19, 26-27 (1960) (upholding transfer where "crucial issues about fault and damages suffered were identical," noting that lower court appropriately viewed the two actions as "inseparable parts of one single 'civil action'").

SEC maintains that this is a simple case of securities fraud and reporting violations which, because it is based almost exclusively on Defendant's conduct, bears no relation to any other options backdating cases. Indeed, Defendant cites to no case where an action was transferred because a certain geographical region had a general interest in subject matter related to a case, nor does Defendant explain why that should matter. Similarly absent from Defendant's Memorandum are any cases where the fact of numerous, unconsolidated cases within a geographic region was relevant.

### ii. *Relative congestion of docket does not support transfer*

Relative docket congestion is an appropriate factor to be considered. *See Savoy Indus.*, 587 F.2d at 1156. Although it is not a primary factor, it is a proper consideration when the balance on convenience to the parties and the witnesses is not heavily weighted in favor of one party. *See Hart,* 1978 WL 1091, at *2.

The relative congestion of calendars in the Northern District of California and the District of Columbia likely favors neither district. Judicial caseload profile statistics compiled by the Administrative Office of the United States Courts suggests that greater docket congestion exists in the Northern District of California than in this Court. (*See* MJN, Ex. G.) Although the median amount of time between filing and disposition is greater in the District of Columbia, a more fulsome look at the statistics suggests that a change is likely in the near future. The Northern District of California experienced a 36.5% jump in case filings in 2006 compared to a 12.9% decline in this District. With such a dramatic increase, it is unlikely that Northern California will maintain its current disposition rate. In fact, *all* other statistics compel a conclusion that the Northern District of California is more congested than this district (e.g., 239 Weighted Filings/Judge in

D.C. vs. 621 per judge in the N.D. Cal.; 8,683 filings in N.D. Cal. vs. 2,947 in D.C.).

Consequently, relative docket congestion does not favor transfer.[14]

### iii. The Northern District has no greater interest in deciding this controversy

Defendant grossly overstates the "localized" nature of this action. As already

addressed above, the operative facts related to this action occurred in D.C., Texas and

California, as well as New York and other locations around the country. The location of

Defendant's criminal action is of no moment here. Defendant's reliance on *Kafack v.

Primerica Life Ins. Co.*, 934 F. Supp. 3 (D.D.C. 1996), is misplaced, as the prosecution in

that case was relevant to the underlying cause of action – an action involving malicious

prosecution. Similarly, the settlement between the SEC and McAfee is irrelevant – that

was an unrelated corporate accounting fraud case.

Finally, Defendant's recitation of statistics regarding widespread options

backdating in Northern California has no relevance to this factor, for the reasons Plaintiff

has already addressed. This case has nothing to do with any other options case or the

issues presented by them. It is important to note, however, that options backdating is not

a local concern in California. The effect of Defendant's conduct at issue here is not

limited to company employees in Santa Clara and Texas. Rather, this fraud affected

---

[14]    Once again, Defendant misleadingly cites to *Reiffin*, 1104 F. Supp. 2d at 58, to suggest that transfer is appropriate based on the proposed transferee court's familiarity with facts and issues. The cases relied upon by Defendant involve cases where judges already had experience with the facts and issues. The three different judges in California with allegedly "related" cases have no such familiarity as each of those actions are in there nascent stages, and this action will not be consolidated with any of them. In fact, there is no reason to believe this action will even be transferred to the same judge as the two federal court actions currently before different judges. *See supra* note 3. The same infirmity befalls his reference to *Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.*, 728 F. Supp. 6 (D.D.C. 1989) (transfer appropriate where related case was advanced in discovery and case involved complex trademark infringement issues already dealt with in the related case).

millions of shareholders, residing throughout the country, who were deprived of accurate information in the filings prepared and/or filed by Defendant.

## CONCLUSION

For the foregoing reasons, the SEC submits that the Defendants have not made the compelling showing necessary to meet their heavy burden of establishing that the District of Columbia is an inappropriate venue for this case.  Plaintiff is not merely asking the Court to give decisive weight to the SEC's choice of venue alone.  Defendant made false and misleading filings in this District, and this forum is the most convenient to the vast majority of relevant witnesses as well as the parties.  Accordingly, the SEC respectfully requests that this Court deny the Defendants' Motion to transfer venue to the Northern District of California.


Dated: June 13, 2007                              Respectfully submitted,


                                                  _____/s/_____
                                                  Stephen L. Cohen (D.C. Bar No. 478601)
                                                  Paul G. Lane (D.C. Bar No. 428821)

                                                  Attorneys for Plaintiff
                                                  Securities and Exchange Commission
                                                  100 F Street, N.E.
                                                  Washington, DC 20549-4030
                                                  Telephone: (202) 551-4472 (Cohen)
                                                  Facsimile:  (202) 772-9245 (Cohen)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
          Plaintiff,          :
     v.                    :     Case Number: 07-CV-00407 (EGS)
                                 :
KENT H. ROBERTS,                 :
                                 :
          Defendant.          :
_____:

## DECLARATION OF PAUL G. LANE IN SUPPORT OF THE SEC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

1.     I, Paul G. Lane, am an attorney with the Division of Enforcement of the United States Securities and Exchange Commission (the "Commission").  I am licensed to practice law in the District of Columbia.

2.     The following informs the declarations that I make herein:  I am the principal attorney handling the Commission's investigation entitled *In the Matter of Network Associates, Inc. (HO-9158)*.  In the course of the investigation, I have taken sworn testimony, interviewed witnesses, and reviewed documents obtained from a number of different sources.  I have worked extensively on the issues concerning stock options at McAfee, Inc. (formerly known as Network Associates, Inc. and referred herein as "McAfee") and assisted in the preparation and filing of the Complaint in this matter against defendant Kent H. Roberts ("defendant" or "Roberts").  In addition, I have spoken with a Vice President of McAfee who was involved in an internal review of the company's stock option practices, which commenced in May 2006 ("Internal Review").

3.    The SEC's investigation into this matter was conducted entirely out of its Washington, D.C. offices.  No part of the investigation was handled by the SEC's San Francisco Regional office.  The SEC's investigative file, including all of its documents received from McAfee, is located in Washington, D.C.  The SEC has not produced any documents to Defendant to date.  I am unaware of any documents that the Justice Department may have produced to Defendant.

4.    McAfee's most current annual report for 2005, filed with the Commission on March 1, 2006, states that its worldwide headquarters are in Santa Clara, California, and it has international facilities located in Germany, India, Ireland, Japan, the Netherlands, the United Kingdom, and Singapore.  The annual report further indicates that it has "significant domestic sites" in California, Oregon, and Texas, and a "European headquarters" located in Cork, Ireland.  The annual report also highlights the fact that McAfee owns a large regional office located in Plano, Texas.  The annual report states: "The 17,000 feet facility opened in January 2003 and is located on 15.6 acres of owned land.  The facility supports approximately 700 employees working in [McAfee's] customer support, engineering, accounting and finance, information technology, internal audit, legal, and telesales groups."  By contrast, only 200 employees currently work in the Santa Clara, California office of McAfee.

5.    At all relevant times during Roberts' employment with McAfee, he was based in the company's Dallas, Texas, or Plano, Texas offices.  Although Mr. Roberts maintained a temporary office in Santa Clara, California, he spent the majority of his time in Texas where he resided.  In addition, employees of the General Counsel's office working for Mr. Roberts were based in Texas and California, but almost all of the

company's legal operations were in Texas.  Roberts, as McAfee's Corporate Secretary,

maintained the minutes of the company's Board of Directors meetings at his offices in

Plano, Texas.

6.     Most of the company's operations relevant to this case are based in Plano,

Texas, not Santa Clara, California, including legal, finance, internal audit, stock

administration, and human resources.  In addition, all of the documents maintained by

these groups relevant to the Internal Review are kept in Plano, Texas.

7.     Contrary to ¶ 3 of the Declaration of William S. Freeman ("Freeman

Decl."), McAfee's Internal Review into its stock option practices began in May 2006 and

was conducted out of the company's Plano, Texas, offices where its finance, internal

audit, and legal groups reside, and where all of the documents relevant to the Internal

Review are located.  When the Internal Review commenced in May 2006, Mr. Roberts,

as General Counsel, was one of the individuals overseeing the Internal Review, which

was conducted from Plano, Texas.

8.     I have reviewed documents related to meetings of the McAfee Board and

Compensation Committee since 2000.  The vast majority of the company's "meetings"

involving the Board of Directors or its Committees were telephonic with people calling in

from around the country.  Of the regular, quarterly and annual Board meetings that took

place in person, there were as many such meetings in New York as there were in Santa

Clara, California.  Several Board meetings also took place in Plano, Texas.  Although the

McAfee Board must meet at least four times annually, only one of the Board's 2006

meetings took place in California, and the overwhelming majority of meetings in recent

years took place telephonically or in New York. In fact, since July 2005, only one

McAfee Board Meeting took place in Santa Clara, California.

        9.       Although SEC actions are often filed in the same jurisdiction as related

criminal actions, it is not uncommon for the Commission to litigate cases in districts

different from the location of a related criminal action. I am aware of several such

actions in the past few years. Such actions include, but are not limited to: *United States*

*v. Ronald Ferguson,* 06 CR 33 (E.D. Va.) and *SEC v. Ferguson*, 06 Civ. 0778

(S.D.N.Y.); *United States v. Timothy Harcharik*, IP05-CR-0153-01-M/F (S.D. Ind.) and

*SEC v. Brightpoint, Inc*., 2:03 Civ. 7045-HB (S.D.N.Y.); *United States v. Vladislav*

*Zubkis*, 3:05-cr-02202-LAB (S.D. Cal.) and *SEC v. Zubkis*, 97 Civ. 8086-JGK

(S.D.N.Y.); *United States v. Jon Hankins*, 3:06-CR-00173-1 (E.D. Tenn.) and *SEC v.*

*Hankins*, 05-5808 (S.D.N.Y.); *United States v. Christopher Benyo et al.*, 1:05CR12 (E.D.

Va.) and *SEC v. Johnson*, 1:05CV0036 (D.D.C.); *United States v. Schlegel*, 2:06-cr-

00550-JS (E.D.N.Y.) and *SEC v. Schlegel*, 06-cv-61251-PAS (S.D. Fla.); *United States v.*

*Robert Goehring*, 1:05-cr-00209 (S.D.N.Y.) and *SEC v. Goehring*, 05-cv-00350 (D.

Conn.); *United States v. Rosenthal*, 2007cr00069 (E.D.N.Y.) and *SEC v. Aragon Capital*,

07 Civ. 919 (S.D.N.Y.).

## **PARAGRAPHS 13 THROUGH 18 OF THE COMPLAINT**

        10.     Paragraphs 13 through 18 of the Commission's Complaint charge that

defendant re-dated and re-priced an option to purchase 20,000 shares of McAfee common

stock that had been awarded to him on February 14, 2000. Although we have not yet

conducted full discovery in this matter, witnesses believed to be relevant to the

Commission's burden of proof on these allegations likely would include, without

limitation,[1] (i) the defendant, (ii) the two members of McAfee's Compensation
Committee in 2000, (iii), McAfee's former Chief Financial Officer, George Samenuk,
and (iv) two members of McAfee's Board of Directors and Compensation Committee,
Denis O'Leary and Robert Dutkowsky (recently retired from the Board).

11.     Defendant Kent H. Roberts served as McAfee's Vice President of Legal
Affairs from February 2000 to July 2001, and was later promoted to General Counsel and
Secretary of the company.  He was fired from McAfee in May 2006.  Roberts's Form W-
2 Wage and Tax Statements for the period 1998 through 2002 provide his home address
as 3315 Cornell Avenue, Dallas, Texas.  A similar statement for the 2003 tax year
indicates that his home address is 4001 Lovers Lane Circle, Dallas, Texas.  Based on
information and belief, defendant Roberts currently resides in Dallas, Texas, and at all
relevant times while employed by McAfee was based in the company's legal offices in
Texas.

12.     An internet search on May 30, 2007, using Google Maps
(http://maps.google.com/) indicated that the distance from Roberts's last known home
address, 4001 Lovers Lane Circle, Dallas, Texas, to the address of this courthouse, 333
Constitution Avenue, N.W., Washington, District of Columbia, is approximately 1,336
miles, while the distance from Roberts's last known home address to the address of the
United States District for the Northern District of California, 450 Golden Gate Avenue,
San Francisco, California, is approximately 1,732 miles.

13.     An internet search on May 30, 2007, using the website for American
Airlines (www.aa.com), revealed that a roundtrip direct flight between Dallas-Fort Worth

---

[1]     It is not my contention that these are the only people with knowledge relevant to the
Commission's claims.  Rather, these are the most critical witnesses who are central to the Commission
meeting its burden of proof.

International Airport, departing at approximately noon, and Washington Ronald Reagan

National Airport, departing at approximately 4 p.m., had a cost of $328 and a flight time

of approximately 3 hours, while a similar roundtrip direct flight from Dallas-Fort Worth

International Airport to San Francisco International Airport had a cost of $348 and a

flight time of approximately 3 ½ hours.

14.     Virginia Gemmell was a member of McAfee's Board of Directors from

1996 to 2001.  Ms. Gemmell and Edwin Harper were the only members of McAfee's

Compensation Committee in 2000.  She is expected to be a witness to having approved

the award to Roberts of an option to purchase 20,000 shares of McAfee common stock

for $29.63 per share, the closing price of McAfee's common stock on February 14, 2000

(see Complaint ¶13).  Ms. Gemmell's last known residential address is in Alexandria,

Virginia, which is within the subpoena power of this Court.

15.     Edwin Harper was a member of McAfee's Board of Directors from 1996

through early 2002, and a member of the Compensation Committee of the Board from

1998 through early 2002.  Mr. Harper and Ms. Gemmell were the only members of

McAfee's Compensation Committee in 2000.  He is expected to be a witness to having

approved the award to Roberts of an option to purchase 20,000 shares of McAfee

common stock for $29.63 per share, the closing price of McAfee's common stock on

February 14, 2000 (see Complaint ¶13).  According to Defendant's declaration, Mr.

Harper's last known address is in Fort Collins, Colorado.  (See, Declaration of William S.

Freeman in Support of Defendant's Motion to Transfer Venue ("Freeman Decl.") ¶ 15).

16.     George Samenuk was the Chief Executive Officer and Chairman of

McAfee's Board of Directors from 2001 to 2006.  He is expected to be a witness to,

among other things, having heard defendant's confession in May 2006 in which defendant stated in substance that he had accessed McAfee's stock option accounting database and illicitly changed the grant date and exercise price for his 20,000-share option award (see Complaint §§ 14-15, 17).  Samenuk currently resides in Ridgefield, Connecticut.

17.     Robert Dutkowsky was a member of McAfee's Board of Directors and Compensation Committee from April 2001 to January 2007.  Mr. Dutkowsky is expected to be a witness to, among other things, having heard defendant's confession in May 2006 in which defendant stated, in substance, that he had accessed McAfee's stock option accounting database and wrongly changed the grant date and exercise price for his 20,000-share option award (see Complaint ¶¶ 14-15, 17).  Mr. Dutkowsky retired from McAfee in January 2007 and is currently the Chief Executive Officer of Tech Data Corporation in Clearwater, Florida, which is the location of his last known residential address.

18.     Denis O'Leary has been a member of McAfee's Board of Directors and Compensation Committee since 2003.  Mr. O'Leary is expected to be a witness to, among other things, having heard defendant's confession in May 2006 in which he stated, in substance, that he had accessed McAfee's stock option accounting database and wrongly changed the grant date and exercise price for his 20,000-share option award (see Complaint ¶¶ 14-15, 17).  Mr. O'Leary currently resides in New York, New York.

19.     In May 2006, McAfee held its annual meeting of shareholders in New York, New York.  Prior to the meeting, Roberts flew from Texas, where he lives and works, to New York, at which time he met with Mr. Samenuk, Mr. Dutkowsky, and Mr.

O'Leary and confessed his conduct in wrongfully changing the grant date and exercise price for this 2000 option grant.

## PARAGRAPHS 19 THROUGH 24 OF THE COMPLAINT

20.    Paragraphs 19 through 24 of the Commission's complaint against defendant charge that Roberts re-priced, without authorization, a 420,000-share option grant to McAfee's Chairman of the Board of Directors and Chief Executive Officer, George Samenuk, in January 2002.

21.    Many of the individuals with information most relevant to these allegations are mentioned above, including, [2] without limitation, defendant Roberts, currently residing in Dallas, Texas, Mr. Samenuk, currently residing in Ridgefield, Connecticut, and the members of the Compensation Committee who approved the grant to Samenuk on January 15, 2002: Dutkowsky, who currently resides in Clearwater, Florida, Gemmell, who is currently residing in Alexandria, Virginia, and Edwin Harper, whose last known residential address is in Fort Collins, Colorado. Additional witnesses with relevant information not mentioned above are identified below.

22.    Eric Brown has served as McAfee's chief financial officer since January 2005. Mr. Brown signed the company's Current Report on Form 8-K and is expected to be a witness to the company's decision to revise the grant date for the Samenuk grant from January 16, 2002, to January 15, 2002, the date on which McAfee's Compensation Committee met and approved the grant to Mr. Samenuk (see Complaint ¶ 24). Mr. Brown lives in McLean, Virginia, maintains a condominium or townhouse in Plano, Texas, and works four to five days a week in McAfee's Plano, Texas offices.

---

[2]    It is not my contention that these are the only people with knowledge relevant to the Commission's claims. Rather, these are the most critical witnesses who are central to the Commission meeting its burden of proof.

23.     Robert B. Bucknam, Dale Fuller, and Chuck Robel are members of the Special Committee to McAfee's Board of Directors that is currently conducting an internal investigation into McAfee's stock option grant practices, with the assistance of independent counsel and forensic accountants ("Internal Investigation"). One or more of them may be witnesses to the Special Committee's recommendation, and the company's decision, to revise the grant date for the Samenuk option grant to January 15, 2002, the date on which the Compensation Committee met and approved the grant (see Complaint ¶ 24). Mr. Bucknam's last known residential address is in Arlington, Virginia. Mr. Fuller's last known residential address is in Menlo Park, California. Chuck Robel's last known residential address is in Menlo Park, California.

## PARAGRAPHS 25 THROUGH 37 OF THE COMPLAINT

24.     Paragraphs 25 through 27 of the Commission's complaint charge that the defendant prepared, signed, and caused to be filed, proxy statements that he knew contained materially false and misleading information or omitted material facts for investors regarding compensation in the form of stock option grants to certain McAfee executives.

25.     Individuals mentioned here earlier with information relevant to these charges include defendant Roberts, currently residing in Dallas, Texas, Samenuk, currently residing in Ridgefield, Connecticut, and all of the following members of the Compensation Committee who approved the grant to Samenuk and the grant to the "McAfee Division President" (see Complaint ¶¶ 29-36) on January 15, 2002: Mr. Dutkowsky, who is currently residing in Clearwater, Florida, Ms. Gemmell, who is

currently residing in Alexandria, Virginia, and Edwin Harper, whose last known residential address is in Fort Collins, Colorado.

26.    Arthur Matin was the president of the company's McAfee Security group from December 2001 to March 2004.  He is the "McAfee Division President" to which the Commission's Complaint against defendant refers in paragraphs 29 through 36.  Mr. Matin resigned from McAfee in March 2004 and his last known address is in Westport, Connecticut.

## SOME WITNESSES LISTED BY THE DEFENDANT MAY NOT BE "CRITICAL TO THE RESOLUTION OF THIS ACTION"

27.    Leslie Denend has been a member of McAfee's Board since 1995.  Mr. Denend was not a member of McAfee's Compensation Committee during times relevant to the allegations in the Commission's Complaint, namely 2000 to the present.  The Defendant expects Mr. Denend "to be a witness with respect to the events surrounding the January 15, 2002 Board meeting."  Freeman Decl. ¶ 6.  Mr. Denend was not a voting member of that committee, even though the minutes for the January 15, 2002 meeting of the Compensation Committee indicate that Mr. Denend was "present."  The minutes for the January 15, 2002 Compensation Committee meeting list other non-members of the Compensation Committee as "present":  George Samenuk (resident of Connecticut), Robert Pangia (resident of New Jersey), and Kent Roberts (resident of Texas).

28.    Richard Hornstein was Roberts' predecessor in the role of general counsel at McAfee.  He left McAfee sometime in 2000.  According to the defendant, Mr. Hornstein "is expected to be a witness with respect to stock option practices at McAfee and with respect to the responsibilities of his position – later held by Mr. Roberts – and

other positions in McAfee's Legal Department." (Freeman Decl. ¶ 8). By his own confession, however, Roberts told no one about his actions in changing the grant date and exercise price for his option award in 2000; this would include, presumably, Mr. Hornstein. Having left the company in 2000, Mr. Hornstein is not likely to possess any relevant information concerning the actions of management and the Board from 2001 to the present.

29.     Enzo Torresi was a member of McAfee's Board from July 1999 until he left sometime in early 2001, although the exact date is not known to me at this time. McAfee's 2001 proxy statement, filed with the Commission on April 27, 2001, lists all members of McAfee's Board, and Mr. Torresi is not mentioned. The defendant expects that Mr. Torresi will be "a witness to the practices of McAfee's Board and its delegation of responsibility to management." (Freeman Decl. ¶ 9). However, during his tenure at McAfee, Mr. Torresi was never a member of McAfee's Compensation Committee, and, given his departure from the company in early 2001, is not likely to possess any relevant information concerning the grants to Arthur Matin and George Samenuk that occurred in late 2001 and early 2002, respectively.

30.     Peter Watkins worked at McAfee from 1995 through 2000. He was named president of McAfee in January 2000 and he resigned in December 2000. According to the defendant, Mr. Watkins "is expected to be a witness to the practices of the Board and its delegation of responsibility to management." (Freeman Decl. ¶ 10). However, Watkins never attended any Board of Director meetings while at McAfee.

31.     Vernon Hodges served as McAfee's president from 2001 to 2006. Hodges was never a member of McAfee's Board of Directors. The defendant expects Mr.

Hodges to be a witness "with respect to stock option practices at McAfee and to management's interaction with the Board." (Freeman Decl. ¶ 14). A search of the minutes for McAfee's Board of Directors and committees of the Board from 1997 through 2005 indicate that, while Hodges attended several meetings of McAfee's full Board and few meetings of the audit committee, there is no record of him being present at a meeting of the Compensation Committee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on June 13, 2007, at Washington, D.C.


   /s/ Paul G. Lane             
Paul G. Lane (D.C. Bar #428821)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
        Plaintiff,             :
    v.                       :      Case Number: 07-CV-00407 (EGS)
                                 :
KENT H. ROBERTS,                 :
                                 :
        Defendant.            :
_____:

**[PROPOSED] ORDER DENYING DEFENDANT KENT ROBERTS'**
**MOTION TO TRANSFER VENUE**

      Pending before the Court is Defendant Kent Roberts' Motion to Transfer Venue

of this action to the United States District Court for the Northern District of California

pursuant to 28 U.S.C. § 1404(a).  Upon consideration of the motion, the response of the

Plaintiff Securities and Exchange Commission, and the reply thereto, the Court **DENIES**

Defendant's Motion because Defendant has failed to meet his burden that the

convenience of the parties and witnesses and the interests of justice would be served by

transferring venue of this action.

Dated: _____, 2007    _____
                                           EMMET G. SULLIVAN
                                           UNITED STATES DISTRICT JUDGE