UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : CASE NUMBER 1:07CV00407 (EGS) |
| KENT H. ROBERTS, | : |
| Defendant. | : |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**
**(28 U.S.C. SECTION 1404(a))**

TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I. Introduction ................................................................................................. 1

II. Argument ..................................................................................................... 3

    A. Venue is More Appropriate in the Northern District of California ........... 3

    B. In its Discussion of the 1404(a) Factors, the Government Distorts the Facts ...................................................................................................... 4

        1. The SEC's Choice of Forum Carries Little Weight because Virtually None of the Facts Supports the District of Columbia as an Appropriate Venue ............................................. 5

        2. Defending Two Cases Brought by the Government on Opposite Coasts is a Significant Burden on Mr. Roberts .............. 6

        3. The Center of the Operative Facts Occurred in the Northern District, Not in this District ............................................................. 7

        4. On Balance, the Convenience of the Parties Will Be Maximized by Transfer ................................................................. 9

        5. The Convenience and Availability of Both Parties' Witnesses Support Transfer ............................................................ 9

        6. Access to Sources of Proof Supports Transfer to the Northern District ...................................................................................... 12

        7. Transfer Will Promote Judicial Efficiency Because the Transferee Court Will Be Familiar with the Same Parties, Witnesses, Documents and Legal Issues .................................... 12

        8. The Relative Congestion of the Courts' Calendars Supports Transfer ....................................................................................... 14

        9. The Local Interest in Deciding Local Controversies Favors Transfer ....................................................................................... 14

III. Conclusion ................................................................................................ 15

## TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Claasen v. Brown*,
   No. Civ. A 94-1018-GK, 1996 WL 79490 (D.D.C. 1996) ...................................................... 12

*Comptroller of the Currency v. Calhoun First Nat'l Bank*,
   626 F. Supp. 137 (D.D.C. 1985) ...................................................................................... 4, 13

*Dean v. Eli Lilly & Co.*,
   Civ. A. No. 06-1375 (EGS), 2007 WL 1589496,
   (D.D.C. June 1, 2007) (Sullivan, J.) (slip op.) ................................................................ 6, 14

*Gemological Inst. of Am. Inc. v. Thi-Dai Phan*,
   145 F. Supp. 2d 68 (D.D.C. 2001) ......................................................................................... 5

*Investors Funding Corp. v. Jones*,
   495 F.2d 1000 (D.C. Cir. 1974) ............................................................................................ 8

*Jyachosky v. Winter*,
   Civ. A. No. 05-02251 (HHK), 2006 WL 1805607 (D.D.C. June 29, 2006) (slip op.) ............. 13

*Pyrocap Int'l Corp. v. Ford Motor Co.*,
   259 F. Supp. 2d 92 (D.D.C. 2003) (Sullivan, J.) ............................................................. 5, 12

*Reiffin v. Microsoft Corp.*,
   104 F. Supp. 2d 48 (D.D.C. 2000) .................................................................................. 13, 14

*SEC v. Ernst & Young*,
   775 F. Supp. 411 (D.D.C. 1991) ....................................................................... 4, 5, 6, 8, 12

*SEC v. KPMG*,
   Civ. No. 03-671 (DLC), 2003 WL 1842871 (S.D.N.Y. April 9, 2003) .................................. 13

*SEC v. Savoy Indus., Inc.*,
   587 F.2d 1149 (D.C. Cir. 1978) ..................................................................................... 3, 4, 8

*Thayer/Patricof Education Funding v. Pryor Resources, Inc.*,
   196 F. Supp. 2d 21 (D.D.C. 2002) ......................................................................................... 3

*United States v. Nature's Farm Prods., Inc.*,
   No. 00-Civ.-6593-SHS, 2004 WL 1077968 (S.D.N.Y. 2004) ............................................. 3, 5

*Weinberger v. Tucker*,
   391 F. Supp. 2d 241(D.D.C. 2005) (Sullivan, J.) ......................................................... 13, 14

**STATUTES**

15 U.S.C. § 78aa ........................................................................................................................... 4

28 U.S.C. Section 1404(a) ........................................................................................ 3, 4, 6, 13, 14

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

**OTHER AUTHORITIES**

Northern District of California,
   Civ. L.R. 3-13 .................................................................................................................. 13

Section 27 of the Exchange Act ........................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

The question at issue in this motion is one of fundamental fairness: whether our federal government should be permitted to prosecute an individual defendant on civil and criminal charges, based on the same alleged facts, in courts located at opposite ends of the country, where the basis for venue here is based solely on the transmission of three documents for filing in this District. Stripped of camouflage, the SEC's answer to this question is that the Government should be able to do so because one of its teams of attorneys would be inconvenienced by traveling to the place of trial. Yet, the SEC does not contest that it has filed two other stock option backdating cases in the Northern District of California; that it regularly files enforcement actions in that district; or that this case was filed in this District despite the fact that it was brought in coordination with the United States Attorney for the Northern District of California. Despite all these facts, however, the SEC maintains that it has what amounts to an absolute right to pursue this action here.

The SEC's argument against transfer is predictably based on familiar jurisprudence concerning the presumptions favoring plaintiffs in forum selection. None of the cases cited by the SEC, however, addresses the unique circumstances of this case: the Government's simultaneous commencement in distant districts of coordinated civil and criminal proceedings. In these circumstances, the SEC's protestations of "convenience" are less persuasive, since the SEC clearly has capable attorneys in its San Francisco offices who could have investigated and prosecuted this case, and the danger of prejudice to Mr. Roberts is correspondingly greater.

Moreover, as a factual matter, the SEC's argument against transfer is predicated on a series of red herrings, including the following:

- "[T]hat McAfee moved most of its critical functions from California to McAfee's Plano, Texas offices in 2003" (Opp. at 3) – effectively conceding that such functions were based in California during 2000, 2001 and 2002, the times relevant to the Complaint;

- That "only one [board of directors] meeting has taken place in Santa Clara since July 2005," (Opp. at 12) again focusing on a time period not relevant to the Complaint and conceding the California locus of the board meetings at issue in this case;

- That this Court is situated 396 miles closer to Defendant's home in Texas than the Northern District court, and that a round-trip plane ticket here may be $20 cheaper than a round-trip ticket to San Francisco (Lane Decl., ¶¶ 12-13) – despite the fact that Defendant Roberts' arguments are based primarily on the unfairness of litigation in multiple fora, access to sources of proof and judicial economy, not the difficulty or expense of personal travel;

- That the only witnesses who can possibly be "relevant" are those the SEC deems necessary to its own case-in-chief, as though the presentation of a defense were somehow unimportant – and despite the fact that even according to the SEC's count, only three of its nine proposed witnesses are subject to a trial subpoena in this Court.

Defendant Roberts does not deny that this case could have been brought here; he respectfully submits, however, that the interests of justice require it be transferred to the district where related criminal proceedings are already pending, where the majority of the underlying events occurred, and where more of the critical witnesses are located and subject to compulsory process. Justice requires that Mr. Roberts be granted full access to an unimpeded defense – which the SEC's choice of forum precludes. Thus, the Court should transfer this action to the Northern District of California.

## II.   ARGUMENT

### A.   Venue is More Appropriate in the Northern District of California

The issue here with respect to venue is not whether venue is proper in the District of Columbia, but rather whether venue is equally proper in the Northern District of California and is more convenient there.  *See* 28 U.S.C. Section 1404(a).  Venue is more convenient in the Northern District and it is in the interest of justice to transfer this case.

The SEC cites *Thayer/Patricof Education Funding v. Pryor Resources, Inc.*, to support its claims that its choice of venue should rarely be disturbed.  196 F. Supp. 2d 21 (D.D.C. 2002).  The facts of *Thayer* are not applicable here.  First, *Thayer* involved private litigants and a private plaintiff's choice of forum is entitled to more weight than the SEC's.  *See United States v. Nature's Farm Prods., Inc.*, No. 00-Civ.-6593-SHS, 2004 WL 1077968, at *6 (S.D.N.Y. 2004) (recognizing that the U.S. Government can adequately litigate in multiple fora and that the Government's choice of forum does not deserve the same level of deference as a private plaintiff who chooses to bring an action in her home district).  Further, *Thayer* involved far more significant contacts with Washington, D.C. than the present case, including:  the negotiation of a purchase of a company, misrepresentations made and relied upon about the company's financial health, and the breach of a contract that was signed and paid for within the District of Columbia.  Thus, the court found that the events at issue had a "significant connection" with plaintiff's chosen forum.  *Thayer,* 196 F. Supp. 2d at 35.  The *Thayer* court also focused on the fact that the defendants chose to travel to the District to do business.  Mr. Roberts made no such decision.  Here, it is just the opposite, none of the alleged facts underlying any purported fraud occurred within the District.

In *SEC v. Savoy Indus., Inc*. – a 1978 case relied upon heavily by the SEC – the Court of Appeals for the District of Columbia mentioned that the presence of the special venue provision

of Section 27 of the Exchange Act is a factor in the Section 1404(a) analysis, but it never claimed that the statute was dispositive in determining venue. 587 F.2d 1149, 1154 (D.C. Cir. 1978).[1] More recently, this Court has noted in a case involving SEC filings that the "conclusion that venue is appropriate in the District of Columbia does not necessarily lead to the conclusion that there is a 'factual nexus between this case and the District of Columbia other than that the filings were made at the office of the [SEC] here.'" *SEC v. Ernst & Young*, 775 F. Supp. 411, 413 (D.D.C. 1991) (alteration in original); *see also Comptroller of the Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 139 n.8 (D.D.C. 1985) (transferring case because, in part, there was no factual nexus between the case and the District of Columbia other than proxy materials and annual reports filed with a federal agency there). In fact, *Ernst & Young* cites *Savoy* to explain that a court's discretion to transfer a case under § 1404(a) is not circumscribed by 15 U.S.C. § 78aa. *See Ernst & Young*, 775 F. Supp. at 413.[2]

### B. In its Discussion of the 1404(a) Factors, the Government Distorts the Facts

In its brief, the SEC distorts the facts and import of decisional law on each §1404(a) factor, including: the reasons for its choice of forum, the true burden on Mr. Roberts, the location of significant events, the location and significance of witnesses and documents and the public's best interest.

---

[1] The facts of *Savoy* are also distinguishable. The Court of Appeals upheld a denial to transfer when the motion came within weeks of trial, the congestion of the transferee court indicated that a more prompt trial would be had if transfer were denied and the District of Columbia court already had a familiarity with the parties, allegations and the history of the litigation. *Id.* at 1156-57.

[2] The SEC tries to distinguish *Ernst and Young* by claiming that there the "SEC did not dispute the location of [the] underlying events or that the majority of relevant fact witnesses" resided in the transferee forum. (Opp. at 9.) This argument misses the mark; the issue is not whether the SEC "disputes" the location of the events and witnesses, but the *truth* of where the majority of events occurred and witnesses are located.

### 1. The SEC's Choice of Forum Carries Little Weight because Virtually None of the Facts Supports the District of Columbia as an Appropriate Venue

The SEC ignores a long line of cases that give plaintiff's choice of forum little deference because the chosen forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.  *See SEC v. Ernst & Young*, 775 F. Supp. at 416 (transferring case and finding that though filings with the SEC in Washington constitute the alleged violation in an SEC enforcement action, the underlying occurrences happened in the transferee court's district); *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 95-97 (D.D.C. 2003) (Sullivan, J.); *Gemological Inst. of Am. Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 73 (D.D.C. 2001) (finding that because the plaintiff's chosen forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter, the plaintiff's choice of the District of Columbia is entitled to little deference); *see also Nature's Farm Prods., Inc.*, 2004 WL 1077968, at *6.

Though the SEC wants the Court to believe that the locus of the operative facts occurred here based on the filing of three documents with the SEC, its complaint clearly demonstrates otherwise.  Moreover, the SEC admits that its primary reasons for filing this case in this District are the location of the particular staff attorneys chosen by the SEC to pursue this case and the fact that it has chosen to bring the documents to the District, rather than any connection this District has with the operative facts.  (*See* Opp. at 9.)  Because the District would be inundated with enforcement actions otherwise, the SEC must show a greater inconvenience than one based on the location of its staff and documents to countervail the inconvenience of forcing Mr. Roberts to "defend [himself] in a forum far from where those actions took place and requiring non-party witnesses to travel far from their place[s] of residence."  *Ernst & Young*, 775 F. Supp. at 415-16.

Neither the location of particular SEC staff attorneys nor the investigative documents support transfer because they are both based upon the location of the SEC's attorneys, not the SEC as a party. The location of the SEC's staff boils down to an impermissible argument that litigating the case in this District will be more convenient to the SEC's lawyers. *See id.* at 415 (noting that the SEC investigates and tries cases all over the country and concerns about minor litigational inconveniences relate far more to the convenience of the SEC attorneys rather than to the SEC itself); *see also Dean v. Eli Lilly & Co.*, Civ. A. No. 06-1375 (EGS), 2007 WL 1589496, *3 n.1 (D.D.C. June 1, 2007) (Sullivan, J.) (slip op.) (noting that the representation by counsel within the plaintiff's chosen forum "bears little, if any, weight in a court's determination of whether to transfer under § 1404(a)") (citations omitted). The SEC also submits that this District is more convenient because "the SEC's documents are located in this district." (Opp. at 9.) Again, this argument was squarely rejected by this Court where, as here, the sole reason such documents are currently in Washington is because the SEC subpoenaed them to its office there:

> The SEC may not use its subpoena power to transport documents from the forum where they were created, and/or where the events underlying them occurred, to an otherwise inconvenient forum and then argue that by doing so it has transformed that otherwise inconvenient forum into one where suit can be sustained, insulated from transfer.

*Ernst & Young*, 775 F. Supp. at 415. Further, any claims that litigating in the Northern District would be a burden rings hollow given that the SEC had no problem conducting a year-long investigation, centered in the Northern District, from the SEC's Washington office. *See id.*

### 2. Defending Two Cases Brought by the Government on Opposite Coasts Is a Significant Burden on Mr. Roberts

In an effort to construct a straw man, the SEC pretends that Mr. Roberts has been coy about his location and that Mr. Roberts has failed to state a reason why defending himself in Washington will be inconvenient. Not so. Instead, Mr. Roberts informs the Court that he is

already the defendant in three actions pending within the Northern District of California – including one brought by another federal agency – and he would be greatly inconvenienced by being forced to litigate on both coasts.

Not once does Mr. Roberts claim that traveling to Washington, D.C. would be burdensome because of where he resides; any argument that traveling to this District is a bit cheaper and faster than traveling to the Northern District *for Mr. Roberts* misses the point entirely. The issue here is that Mr. Roberts is already being required by the Government to travel to the Northern District due to the criminal prosecution. It is fundamentally unfair for the Government to force Mr. Roberts to defend himself on opposite sides of the nation. None of the cases cited by the SEC in its discussion of the defendant's choice of forum involves the presence of another prosecution coordinated and initiated by the Government on the opposite side of the country. (Opp. at 10-11.) There is simply no doubt that, irrespective of where Mr. Roberts resides, transfer of this case to the Northern District would minimize this burden and would not prejudice the SEC.

### 3. The Center of the Operative Facts Occurred in the Northern District, Not in this District

The SEC can only argue half-heartedly that this District has any significant connection to the facts of this case. The only "connection" the SEC can cling to is the alleged filings of three documents with the SEC. These filings alone cannot support a conclusion that venue in this District is the more convenient. If so, the SEC would be free to litigate any complaint it wanted to in its own backyard, without fear of a venue transfer. Indeed, every filing with the SEC by any public company occurs within this District. That does not mean, however, that the majority of the operative facts in every enforcement action based on misfilings occur within the District.

*See, e.g., Ernst & Young*, 775 F. Supp. at 414 ("Outside the filing themselves, no underlying facts arose in the District of Columbia").[3]

Instead, most of the alleged facts underlying the SEC's complaint occurred in the Northern District, where the administration of McAfee's stock option program took place during the relevant time period. It is undisputed that, at that time, McAfee's stock administration, accounting and finance departments were located in Santa Clara, California and that key board meetings took place there. The SEC's explanation that most of McAfee's "critical functions" moved to Texas in January of 2003 is effectively an admission that during the times *relevant to the Complaint* (2000 through 2002), these "critical functions" were based within the Northern District. And, in any event, *none* of these "critical functions" were ever located in this District. Further, the SEC's claims that only one Board of Directors meeting has been located in Santa Clara *since 2005* and that *since January of 2002* fewer than half of the Board meetings have taken place in Santa Clara are further concessions that California was the locus of the Board meetings at issue in this case. (*See also* Declaration of William Freeman ¶ 5 and Ex. A, attached to Def.'s Mot. to Transfer Venue ("Freeman Decl.")) Similarly, *none* of these meetings occurred within this District.

The SEC also misconstrues Mr. Roberts's observation that the internal investigation into McAfee's stock options practices occurred from and within California. (Mot. to Transfer at 12.) The internal investigation referred to by Mr. Roberts is that of the Special Committee through its

---

[3] The SEC's discussion of *Savoy* is another red herring. (Opp. at 13.) Mr. Roberts has never argued that the allegedly false filings with the SEC do not support venue in this District. Instead, Mr. Roberts accurately stated that the center of gravity of relevant facts – the facts underlying the alleged false filings – occurred elsewhere. Indeed, it is true that a vast majority of these facts occurred in the Northern District. Further, in *Investors Funding Corp. v. Jones*, cited by the SEC (Opp. at 13) to support its venue claim, the main offense was the late filing of annual and quarterly reports, not any alleged underlying fraud. 495 F.2d 1000, 1001 (D.C. Cir. 1974). Again, Mr. Roberts does not contend that venue in this District is improper.

independent counsel Mr. Robert Gooding of Howrey LLP.  According to Howrey's website (www.howrey.com), Mr. Gooding's office is located in Irvine, California and the firm has an office in San Francisco.

Finally, Mr. Roberts never suggested that this matter could be "consolidated" – i.e., two cases become one – with any related case pending in the Northern District; however, the criminal matter before Judge Patel involves largely the same allegations, parties and sources of proof and transfer of this matter to Judge Patel would no doubt save judicial resources.  Mr. Roberts informs the Court of the presence of the criminal action and the derivative litigation in the Northern District to clearly demonstrate that the operative facts in this case occurred in the Northern District and that transfer would promote judicial economy.

### 4. On Balance, the Convenience of the Parties Will Be Maximized by Transfer

As discussed above, the Northern District is far more convenient for Mr. Roberts because he already faces serious criminal charges there.  By contrast, the SEC has not shown it would suffer any significant inconvenience if trial were to occur in the Northern District.  In fact, the SEC litigates there frequently.  (*See* Freeman Decl., ¶ 33.)  Further, the Northern District is more convenient for the parties because a vast majority of the relevant documents and key witnesses are located in or near the Northern District.  (Freeman Decl. ¶¶ 6-27.)  Thus, the convenience of the parties strongly supports transfer.

### 5. The Convenience and Availability of Both Parties' Witnesses Support Transfer

The SEC's analysis is based on a unilateral and premature determination about which witnesses are "relevant," as if it is the sole arbiter of relevance in this case.  In doing so, perhaps not surprisingly, the SEC treats the witnesses that are critical to Mr. Roberts' defense as an afterthought.  The SEC completely ignores the fact that a majority of the witnesses relevant to

*both* parties' cases are not subject to compulsory process within this District and would be significantly inconvenienced by travel to Washington, D.C.  On the other hand, a majority of the witnesses relevant to both parties live within the Northern District and therefore are subject to a trial subpoena there.

The best argument the SEC can make regarding the location of witnesses in or near the District is that three witnesses happen to reside in Virginia.  Otherwise, the SEC admits that the "relevant" witnesses are located all over the country.  In deciding who these "relevant" witnesses are, the SEC ignores the participants in and the location and timing of the events at issue.

For example, the SEC makes no mention of the fact that the administration of and accounting for stock options during the relevant time period occurred within the Northern District.  The vast majority of McAfee employees involved in that process were located at the Santa Clara facility and have first hand knowledge of how stock options were administered and accounted for – both key factors in this case.  It is disingenuous of the SEC to maintain that Ms. Sylvia Garcia-Lechelt, the Senior Vice President of Human Resources during the relevant time period, is not an important witness.  (Opp. at 21 stating that Ms. Garcia-Lechelt "may be able to testify about some of the grants at issue.")  After all, she is featured prominently in the SEC's complaint.  (Compl. at ¶¶ 19-21.)  And, there is no dispute that Ms. Garcia-Lechelt resides within the Northern District.  (Freeman Decl. ¶ 7.)  Likewise, the SEC attempts to diminish the role of Mr. Terry Davis, McAfee's Controller and Senior Vice President of Corporate Finance from 2000 through 2002.  Mr. Davis, who resides on the West Coast, played a key role in the administration and accounting treatment of stock options during the time period referenced in the SEC's complaint.  (*Id.* at ¶ 13.)

In addition, the SEC fails to include on its list of "relevant" witnesses anyone else that actually administered the granting of stock options or were involved in the accounting and finance departments' treatment of stock options at the Santa Clara facility. Some of these employees, like Jennefer Koopman, have already been identified by Mr. Roberts and reside in the Northern District. As more witnesses are uncovered, the vast majority of those involved with the administration of and accounting for stock options will likely be residents within or near the Northern District. For these rank-and-file employees, travel to Washington, D.C. for trial will be far more burdensome than travel for the well-to-do current and former Board members and executives who happen to live on the East Coast.

Also disingenuous is the argument that although two of the three members of the Special Committee of the Board in charge of McAfee's internal investigation live within the Northern District, it is somehow sufficient to call only the one member who happens to live in Virginia because testimony from the residents of California would be "cumulative." (Opp. at 20.)

One of the Virginia-based residents on which the SEC relies in fact has no first-hand knowledge of any relevant facts. Eric Brown, McAfee's Chief Financial Officer, joined McAfee in January of 2005. Yet, the SEC claims that the testimony of Mr. Brown is somehow more "relevant" than the witnesses identified by Mr. Roberts, virtually all of whom were employees of McAfee during the time period covered by the SEC's complaint. Further, as an officer of McAfee, it is likely that Mr. Brown travels to the Northern District and would not be inconvenienced by appearing for trial there.

The SEC accuses Mr. Roberts of failing to identify any witnesses who would refuse to testify in this District. At this early stage of the proceedings, Mr. Roberts obviously does not have a crystal ball. Given McAfee's history of enforcement problems with the SEC, however, it

is likely that numerous witnesses associated with McAfee will be reluctant to testify voluntarily at trial.  This Court has recognized that access to live testimony is preferred.  *See Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 98 (D.D.C. 2003) (Sullivan, J.) (citing *Claasen v. Brown*, No. Civ. A 94-1018-GK, 1996 WL 79490, at *6 (D.D.C. 1996)).  It is unfair to require Mr. Roberts to bear the risk that he will not be able to obtain the live testimony in his defense without the ability to subpoena them to appear.  Therefore, the convenience and availability of the witnesses support transfer as well.

      **6.**      **Access to Sources of Proof Supports Transfer to the Northern District**

Contrary to the SEC's assertion, many documents related to the administration and accounting for stock options, including the grants at question, were created in – and are, in fact, still located within – the Northern District.  Despite where the documents were originally created or are currently housed (Santa Clara, CA or Plano, TX), it undisputed that *none* were housed in this District prior to the SEC's investigation.  As discussed above, this Court has found that the SEC's decision to choose this forum because SEC documents were delivered there in response to a subpoena is not a permissible convenience factor.  *See Ernst & Young*, 775 F. Supp. at 415. Thus, the location of the documents does not support maintaining this case in this District.

      **7.**      **Transfer Will Promote Judicial Efficiency Because the Transferee Court Will Be Familiar with the Same Parties, Witnesses, Documents and Legal Issues**

The existence of related cases pending in the Northern District and the inefficiencies of litigating this case and the criminal case in separate districts also support transfer.  Any claim that the criminal case is not related is belied by the fact the DOJ has moved to intervene in the SEC's action on the basis that the two cases involve the "same scheme to defraud, and it details the same chronology of events."  (DOJ's Mot. to Intervene and Stay Discovery ("Mot. to Stay") at 4.)  The DOJ also admits that "[i]nevitably, the same witnesses and documents will be the

proof for both cases." (*Id.*); *see also* Northern District of California, Civ. L.R. 3-13 (an action is related to another when the action concerns substantially the same parties, property, transaction or event and it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if conducted before different judges).[4]

Recent decisions by the Court recognize that transferring cases that have the same factual underpinnings to the same court supports judicial efficiency. *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) (Sullivan, J.); *see also Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 55 (D.D.C. 2000). Transfer promotes judicial economy even when the cases cannot be consolidated. *See Calhoun First Nat'l Bank*, 626 F. Supp. at 141 (transfer served the interest of justice because, though it would not likely result in consolidation, related cases with the same factual underpinnings were pending in the transferee district); *see also Jyachosky v. Winter*, Civ. A. No. 05-02251 (HHK), 2006 WL 1805607, *6 (D.D.C. June 29, 2006) (slip op.) (to "permit a situation in which two cases simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

The SEC tries to discredit *Weinberger* and *Reiffin* as somehow inapplicable because they involve courts that had already heard the first of two cases involving the same facts, parties and legal issues and because the earlier case may have had preclusive effect on the second. But that is exactly what the Government hopes will happen here. The Government has already admitted that if this case proceeds as the Government would like – i.e. that the criminal trial will precede the civil trial – it believes that certain issues may be decided by issue preclusion. (*See* Mot. to

---

[4] The SEC's reliance on *SEC v. KPMG* to support its claim that the presence of related cases before the Northern District is not a significant 1404(a) factor is misplaced. Unlike this case, *KPMG* does not involve two cases pending simultaneously on opposite coasts with the same parties, claims and operative facts. *KPMG* dealt with cases involving different plaintiffs (the SEC vs. private plaintiffs) and different defendants. *SEC v. KPMG*, Civ. No. 03-671 (DLC), 2003 WL 1842871, *5 (S.D.N.Y. April 9, 2003).

Stay at 12) ("[I]f Roberts is convicted, he may be precluded from re-litigating in the civil proceeding facts relating to his participation in the fraud, which will conserve judicial resources.")  Thus, under the Court's logic explained in *Weinberger* and *Reiffin*, transfer to the Northern District will promote judicial efficiency.

Finally, because the operative facts occurred elsewhere, this Court should decline to decide this case given the tenuous connection between this enforcement action and this forum. As the Court recognized earlier this month, "it would be unfair to burden this Court's resources with the plaintiffs' claims given the lack of connection between this lawsuit and the District of Columbia."  *See Dean*, 2007 WL 1589496 at *5 (transferring the lawsuit under § 1404(a) based in part on the fact that the transferee court had decided cases involving similar facts and that there was a strong nexus between that district and the operative facts).

### 8. The Relative Congestion of the Courts' Calendars Supports Transfer

The SEC concedes that congestion, the time needed between the filing and disposition or trial of a case, is greater in this District.  (Opp. at 25.)  The SEC's prediction that the disposition rates in the Northern District will deteriorate is pure speculation.  Thus, the congestion of the courts favors transfer to the Northern District.

### 9. The Local Interest in Deciding Local Controversies Favors Transfer

Because the claims arose primarily in Santa Clara, California, the Northern District has an undoubted local interest in deciding this controversy.  *See Dean*, 2007 WL 1589496 at *5. The SEC argues that "options backdating is not a local concern in California."  (Opp. at 26.) This statement could not be farther from the truth.  The statistics set forth by Mr. Roberts clearly demonstrate that California – and the Northern District in particular – is the center of the stock options controversy.  (*See* Freeman Decl. ¶¶ 31-33.)  One only needs to read the newspaper to understand that the vast majority of options backdating allegations originate in the Bay Area.

### III.   CONCLUSION

The only reason this action was filed in this District is that the plaintiff, a federal agency with offices in this District, chose to file here because the attorneys it designated to investigate the case, and their documents, are located here, even though those attorneys coordinated closely with another federal agency that simultaneously indicted Defendant Roberts in the Northern District for the same alleged acts.  Justice requires this case be transferred to the district where related criminal proceedings are already pending, where the majority of the underlying events occurred, where more of the critical witnesses are located and subject to compulsory process, and where judicial economy will be best served.  Accordingly, the Defendant respectfully requests that this action be transferred to the United States District Court for the Northern District of California.

Dated:  June 20, 2007

Respectfully submitted,

COOLEY GODWARD KRONISH LLP
Michael J. Klisch (DC Bar No. 429711)
1200 19th Street, NW
5th Floor
Washington, DC 20036
(202) 842-7800

COOLEY GODWARD KRONISH LLP
Stephen C. Neal (CA Bar No. 170083)
William S. Freeman (CA Bar No. 82002)
Neal J. Stephens (CA Bar No. 152071)
Shannon M. Eagan (CA Bar No. 212830)
Einat Sandman (CA Bar No. 234776)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5000

By:  _____/s/_____
       Michael J. Klisch (DC Bar No. 429711)

Attorneys for Defendant
KENT H. ROBERTS

754981 v6/PA